sense, but, rather, whether these specific lodging facilities were reasonably necessary to accomplish the educational purpose of the Foundation in the operation of its museum. Just as the grazing and farming lands were reasonably necessary to the charitable and educational purposes of the boys' ranch in *Lariat Boys Ranch* and the childcare facility was reasonably necessary to accomplish the charitable purposes of the hospital in *Immanuel, Inc.*, the operation of the motel and campground by the Foundation is reasonably necessary to the accomplishment of its educational mission.

Because we conclude that TERC erred as a matter of law in vacating and reversing the decisions of the board, we need not consider the Foundation's remaining assignments of error.

## CONCLUSION

For the reasons discussed, we reverse TERC's decisions which vacated and reversed the decisions of the board, and we remand each cause to TERC with directions to affirm the board's decision granting property tax exemptions to the Foundation for its motel and campground properties for the tax year 2011.

REVERSED AND REMANDED WITH DIRECTIONS.

---

IN RE INTEREST OF DANAISHA W. ET AL.,
CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V.
DENNISCA W., APPELLANT.
___ N.W.2d ___

Filed December 13, 2013.    No. S-13-218.

1. **Juvenile Courts: Appeal and Error.** An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings.
2. **Jurisdiction: Appeal and Error.** A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law.
3. **Juvenile Courts: Jurisdiction: Appeal and Error.** In a juvenile case, as in any other appeal, before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.

4. **Jurisdiction: Final Orders: Appeal and Error.** For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the court from which the appeal is taken.

5. **Final Orders: Appeal and Error.** Among the three types of final orders which may be reviewed on appeal is an order that affects a substantial right made during a special proceeding.

6. **Juvenile Courts: Appeal and Error.** A proceeding before a juvenile court is a special proceeding for appellate purposes.

7. **Child Custody: Visitation: Final Orders: Appeal and Error.** Orders which temporarily suspend a parent's custody and visitation rights do not affect a substantial right and are therefore not appealable.

8. **Juvenile Courts: Parental Rights: Parent and Child: Time: Final Orders.** Whether a substantial right of a parent has been affected by an order in juvenile court litigation is dependent upon both the object of the order and the length of time over which the parent's relationship with the juvenile may reasonably be expected to be disturbed.

Appeal from the Separate Juvenile Court of Lancaster County: Linda S. Porter, Judge. Appeal dismissed.

Hazell G. Rodriguez, of Legal Aid of Nebraska, for appellant.

Joe Kelly, Lancaster County Attorney, and Carolyn C. Bosn for appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Stephan, J.

Dennisca W. is the mother of six minor children who are the subject of a juvenile proceeding pending in the separate juvenile court of Lancaster County. She appeals from an order of that court, contending that its provisions with respect to visitation amount to an improper delegation of the juvenile court's authority to the Department of Health and Human Services (DHHS). The State contends that the order is not appealable. We agree with the State and therefore dismiss the appeal for lack of jurisdiction.

## BACKGROUND

Of the six children involved in this case, the oldest child was born in 2004 and the youngest children, twins, were born in 2010. Insofar as we can determine from the record,

the children's fathers have not been made parties to the juvenile proceedings.

This juvenile proceeding began in March 2011, when an order for temporary custody was entered based on reports of domestic abuse and after Dennisca left her infant unattended while seeking medical treatment for one of her other children. The children were adjudicated on May 12, 2011, after Dennisca entered a plea of no contest. The juvenile court made findings that the children were at risk of harm due to domestic violence in the home. It also found that after the twins' birth, meconium test results for one of the twins showed the presence of marijuana.

The children were originally placed with their maternal grandmother. Dennisca was permitted to live in the same home, and the children were returned to her custody in January 2012, with a requirement that she and the children continue to reside with the grandmother. It was subsequently discovered that Dennisca and the children were frequently staying with other family members, and the children were again removed from her custody and were placed in foster homes.

The juvenile court conducted a review hearing on October 29, 2012, and entered a dispositional order on November 1. In that order, the court found that reasonable efforts had been made to return legal custody of the children to Dennisca, but that doing so would be contrary to the welfare of the children due to Dennisca's "lack of appropriate behaviors in interactions with her children and others"; her "relapse in the use of controlled substances and failure to successfully complete substance abuse treatment"; and her "failure to date to demonstrate a safe, stable, and drug-free and violence-free environment for her children." The court further found that "the health and safety of the minor children require said children's continued removal from the family home" and that it was "in the children's best interests and welfare that they remain in out-of-home placements at this time."

The court overruled Dennisca's request to place the children back with their maternal grandmother. The court ordered Dennisca to establish a safe and stable home and a legal means of support for herself and her children, to abstain from alcohol

and nonprescribed controlled substances, and to participate in individual therapy sessions "to address anger management, healthy interpersonal relationships, social skills, including working cooperatively with others involved in her children's lives, and abstinence from controlled substances." The order also provided: "Visitation/parenting time between [Dennisca] and the minor children is temporarily suspended at this time." There was no appeal from this order.

On December 6, 2012, the State filed a motion for termination of parental rights. The case came before the court on December 18 for a hearing on Dennisca's motion to reinstate visitation rights, which the court overruled after receiving evidence. After providing Dennisca with a copy of the motion to terminate parental rights, the court scheduled an adjudication hearing on the motion for January 29, 2013. There was no appeal from this order.

At the January 29, 2013, hearing, the court advised Dennisca of her rights with respect to the motion to terminate her parental rights and received her plea of "denial." After stating that it would conduct a formal hearing on the motion to terminate parental rights on March 21, the court accepted Dennisca's request to conduct a review hearing on the issue of visitation. The court thereafter received evidence on the visitation issue, including a court report submitted by DHHS, a report of the guardian ad litem, documents compiled by KVC Behavioral Healthcare regarding care plans for the children, and a report from the Nebraska Foster Care Review Office. Dennisca testified at the hearing, as did the DHHS caseworker assigned to the case.

In an order entered on February 11, 2013, the juvenile court found that services had been provided in compliance with the case plan and that Dennisca had made no sustained progress to alleviate the causes of the adjudication and the children's out-of-home placements. The court ordered that the children remain in the temporary custody of DHHS for placement, treatment, and care, and further ordered that DHHS could not change the foster placements without prior court approval. The court ended its temporary suspension of Dennisca's visitation rights, but imposed specific conditions upon such visitation. It

ordered that Dennisca could have visitation with each of the children at a location selected by DHHS, fully supervised by a therapist, DHHS caseworker, or family support worker who is familiar with the child. Visitation with each of the children was to be separate. The order further provided that Dennisca could be required to meet with any therapist who was supervising a visit prior to the visit to "go over ground rules and suggestions." She was also directed not to discuss with the children the pending termination proceeding or the children's placement. In addition, no other persons were to be present during the visitation except Dennisca and the individual designated by DHHS to supervise the visit. The order provided: "If [Dennisca] is unwilling to abide by any ground rules and the restrictions as to the visitation as set forth herein, visitation with that child or those children shall remain suspended pending further hearing before this Court."

On March 5, 2013, Dennisca filed a motion to compel, asking the court to enter an order directing DHHS to immediately schedule visitation based on the February 11 order. The motion stated that Dennisca's counsel had encountered difficulty in making arrangements with DHHS for the visits ordered by the court. On March 8, 3 days after filing the motion to compel, and before any disposition by the juvenile court, Dennisca filed a notice of appeal from the February 11 order.

While the appeal was pending before the Nebraska Court of Appeals, the State filed a motion for summary dismissal pursuant to Neb. Ct. R. App. P. § 2-107(B)(1) (rev. 2012), contending that there was no final, appealable order. The Court of Appeals denied the motion. We subsequently moved the case to our docket on our own motion, pursuant to our statutory authority to regulate the caseloads of the appellate courts of this state.[1]

## ASSIGNMENTS OF ERROR

Dennisca contends that the juvenile court erred in (1) delegating its authority to DHHS and therapists to determine and

---

[1] See, Neb. Rev. Stat. § 24-1106(3) (Reissue 2008); Neb. Ct. R. App. P. § 2-102(C) (rev. 2012).

enforce their own conditions for visitation; (2) determining that visitation with the children should be separate, contrary to the best interests of the children and despite Dennisca's progress and improvement; and (3) creating a conditional order, which Dennisca contends is unreasonable and void.

## STANDARD OF REVIEW

[1,2] An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings.[2] A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law.[3]

## ANALYSIS

[3-6] The State reasserts its argument that we lack appellate jurisdiction because there was no final, appealable order by the juvenile court. In a juvenile case, as in any other appeal, before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.[4] For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the court from which the appeal is taken.[5] Among the three types of final orders which may be reviewed on appeal is an order that affects a substantial right made during a special proceeding.[6] A proceeding before a juvenile court is a special proceeding for appellate purposes.[7] Therefore, we must consider whether the order of the juvenile court which imposed conditions and restrictions upon Dennisca's visitation with her children affected a substantial right.

[2] *In re Interest of Edward B.*, 285 Neb. 556, 827 N.W.2d 805 (2013); *In re Interest of Kendra M. et al.*, 283 Neb. 1014, 814 N.W.2d 747 (2012).

[3] *In re Adoption of Amea R.*, 282 Neb. 751, 807 N.W.2d 736 (2011); *In re Interest of Jamyia M.*, 281 Neb. 964, 800 N.W.2d 259 (2011).

[4] *In re Interest of Meridian H.*, 281 Neb. 465, 798 N.W.2d 96 (2011); *In re Interest of Taylor W.*, 276 Neb. 679, 757 N.W.2d 1 (2008).

[5] *Selma Development v. Great Western Bank*, 285 Neb. 37, 825 N.W.2d 215 (2013).

[6] See *id*.

[7] *In re Interest of Jamyia M., supra* note 3.

[7] We have held that where an order from a juvenile court is already in place and a subsequent order merely extends the time for which the previous order is applicable, the subsequent order by itself does not affect a substantial right and does not extend the time in which the original order may be appealed.[8] The State contends that this rule applies here because the juvenile court's order of February 11, 2013, imposing conditions on Dennisca's visitation rights, was merely a continuation of its order of November 1, 2012, suspending those rights, from which Dennisca did not appeal. But the State's position is incorrect because the November 1 order explicitly stated that Dennisca's visitation and parenting time were "temporarily suspended." Orders which temporarily suspend a parent's custody and visitation rights do not affect a substantial right and are therefore not appealable.[9]

[8] However, we find the February 11, 2013, order was not a final order for a different reason. Whether a substantial right of a parent has been affected by an order in juvenile court litigation is dependent upon both the object of the order and the length of time over which the parent's relationship with the juvenile may reasonably be expected to be disturbed.[10] Although the February 11 order was not specifically designated as "temporary" in nature, it was effectively so, because on the same date, the court scheduled the hearing on the State's motion to terminate parental rights for March 21. Borrowing from our final order jurisprudence in juvenile cases, we held in *In re Guardianship of Sophia M.*[11] that an order which denied a mother visitation with her child pending a final hearing on the custodial grandparents' petition for guardianship did not affect the mother's substantial right, because the hearing was scheduled for 3 weeks later. We reasoned that "since the order

---

[8] *In re Guardianship of Rebecca B. et al.*, 260 Neb. 922, 621 N.W.2d 289 (2000).

[9] See, *Steven S. v. Mary S.*, 277 Neb. 124, 760 N.W.2d 28 (2009); *In re Guardianship of Sophia M.*, 271 Neb. 133, 710 N.W.2d 312 (2006).

[10] *In re Adoption of David C.*, 280 Neb. 719, 790 N.W.2d 205 (2010); *Steven S. v. Mary S., supra* note 9.

[11] *In re Guardianship of Sophia M., supra* note 9.

effectively denied visitation only until the final guardianship hearing, the length of time that [the mother's] relationship with [the child] was to be disturbed was brief, and the order was not a permanent disposition."[12]

Given the procedural posture of this case at the time the February 11, 2013, visitation order was entered, the order could be expected to affect Dennisca's relationship with her children only until such time as the juvenile court ruled on the State's motion to terminate her parental rights. It is that disposition which will determine whether the parental relationship will continue and, if so, under what conditions. Had this appeal not been taken, the resolution of the motion to terminate parental rights would likely have occurred within a few weeks after entry of the visitation order. As we noted in *In re Guardianship of Sophia M.*, the fact that an appeal has delayed final disposition "is unfortunate but irrelevant in our determination whether the order, when issued, affected a substantial right."[13]

We conclude that because the February 11, 2013, order related to visitation and was necessarily temporary in nature, it did not affect a substantial right and was not a final, appealable order. Accordingly, we dismiss the appeal for lack of jurisdiction.

## CONCLUSION

For the reasons discussed, we find that this court lacks jurisdiction and that the appeal must be dismissed.

APPEAL DISMISSED.

---

[12] *Id.* at 139, 710 N.W.2d at 317.

[13] *Id.*