In re Interest of Cassandra B. and Moira B.,
children under 18 years of age.
State of Nebraska, appellee, v.
Angel B., appellant.

___ N.W.2d ___

Filed April 3, 2015.    No. S-14-708.

1. **Juvenile Courts: Appeal and Error.** An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other.

2. **Juvenile Courts: Jurisdiction: Appeal and Error.** In a juvenile case, as in any other appeal, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.

3. **Juvenile Courts: Final Orders: Appeal and Error.** For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the court from which the appeal is taken.

4. **Final Orders: Appeal and Error.** Among the three types of final orders which may be reviewed on appeal is an order that affects a substantial right made during a special proceeding.

5. **Juvenile Courts: Appeal and Error.** A proceeding before the juvenile court is a special proceeding for appellate purposes.

6. **Juvenile Courts: Parental Rights: Parent and Child: Time: Final Orders.** Whether a substantial right of a parent has been affected by an order in juvenile court litigation is dependent upon both the object of the order and the length of time over which the parent's relationship with the juvenile may reasonably be expected to be disturbed.

7. **Constitutional Law: Parental Rights.** Parents have a fundamental liberty interest in directing the education of their children.

8. **Parental Rights: Final Orders: Appeal and Error.** Orders which temporarily suspend a parent's custody, visitation, or education rights for a brief period of time do not affect a substantial right and are therefore not appealable.

9. **Juvenile Courts: Final Orders: Constitutional Law: Parent and Child.** The substantial right of a parent in juvenile proceedings is a parent's fundamental, constitutional right to raise his or her child.

10. **Juvenile Courts: Minors.** The State has a right, derived from its parens patriae interest, to protect the welfare of its resident children.

11. **Juvenile Courts: Parental Rights.** A juvenile court has the discretionary power to prescribe a reasonable program for parental rehabilitation to correct the conditions underlying the adjudication.

Appeal from the Separate Juvenile Court of Lancaster County: Linda S. Porter, Judge. Affirmed.

John C. Ball, of Pollack & Ball, L.L.C., for appellant.

Joe Kelly, Lancaster County Attorney, and Lory A. Pasold for appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Stephan, J.

Angel B. is the mother of Cassandra B., born in 1998, and Moira B., born in 2008. She appeals from an order of the separate juvenile court of Lancaster County prohibiting her from homeschooling Moira until further order of the court. We conclude that the order was final and appealable. Finding no error, we affirm.

## FACTS

In May 2012, the State asked the juvenile court to place Cassandra and Moira in the temporary custody of Nebraska's Department of Health and Human Services (DHHS) pursuant to Neb. Rev. Stat. § 43-248 (Cum. Supp. 2012). The request was supported by the affidavit of a representative of the Lancaster County sheriff's office describing an incident that occurred at a home in rural Lancaster County, Nebraska, on May 11, 2012. The juvenile court entered the requested order, based upon its finding that Cassandra, who was then 13 years old, had been forced to sleep outside in a tent when the temperature was 55 degrees. When Cassandra attempted to reenter the house, she was forced back into the tent and her uncle "zip tied" the tent shut. Cassandra escaped, and Angel then turned on a water hose, which Cassandra's uncle used to spray Cassandra with water. Angel also gave the uncle a rope, which he attempted to tie around Cassandra's wrists. The court found that these facts placed both Cassandra and Moira at risk of harm.

Angel subsequently entered a no contest plea to an amended petition alleging that both Cassandra and Moira were children who came within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2008), and the children were

adjudicated on August 1, 2012. The adjudication order included a finding that Cassandra had "severe mental and behavioral health needs" which required "immediate intervention for the safety and well-being of both minor children." The order further found that "[o]n one or more occasion[s]," Angel had "used inappropriate discipline when trying to handle Cassandra['s] extensive needs. Angel . . . needs assistance in addressing the extensive needs of Cassandra . . . and learning appropriate discipline. The above situation places both of the minor children at risk of harm."

The court ordered that temporary legal and physical custody of both children should remain with DHHS. Cassandra was placed outside the home, but Moira was returned to the physical care of Angel and has remained there since. Cassandra now resides with her paternal grandparents in another state. This appeal pertains only to Moira.

The original disposition was on October 22, 2012. At that time, the court adopted a case plan, which provided in relevant part that Angel should not subject Moira to any form of physical discipline or restraint and that Angel would complete a full psychological evaluation.

A review hearing was held on December 10, 2013. At that hearing, DHHS requested that Angel be ordered to undergo an updated psychological evaluation. This request was based on concerns regarding Angel's mental health, expressed by both the DHHS family services caseworker assigned to the case and Moira's therapist. Evidence also showed that in September and October 2013, Angel had locked Moira in her bedroom as a form of discipline. The caseworker testified that in late November or early December, Moira had hit and kicked a visitation worker and was so uncontrollable that the police had to be called. The caseworker also testified that Angel continued to think that forcing Cassandra to stay alone in a tent in the middle of the night had been an acceptable form of discipline. The caseworker thought Angel was making very little progress in therapy. She further reported that Angel was at times volatile in her interactions with her and in November 2013, had yelled at the caseworker for an extended period of time during a home visit.

In its order entered after the hearing, the court found, inter alia, that Angel was not cooperating with DHHS and that she had failed to take responsibility for the improper discipline of Cassandra. The court ordered that Moira should remain physically placed with Angel, but noted that Angel's "care of Moira, including her emotional well being, should be carefully monitored by [DHHS] pending further hearing in this case." The court also ordered both Angel and Moira to participate in individual therapy.

Another review hearing was held on June 30, 2014. By that time, Cassandra was residing with her grandparents. The same caseworker testified that Moira had attended kindergarten at a Catholic school during the 2013-14 school year and had done well. She testified that Angel expressed no complaints about the curriculum at the school. Moira's behavior had improved, and her therapist was recommending less frequent therapy. The caseworker also testified that there had been no recent concerns regarding parenting or safety during random drop-in visits at Angel's residence.

The caseworker testified in June 2014 that DHHS had concerns about Angel's desire to homeschool Moira. School officials informed the caseworker that Moira was behind academically when she started kindergarten but was catching up, and the officials were concerned that she might fall behind again if homeschooled. The peer interaction at school had also helped Moira improve her ability to share and communicate with others. DHHS was also concerned about Angel's ability to homeschool Moira, because Angel worked full time, and when asked to provide information about a proposed schedule and curriculum, she became defensive and did not provide the information. Further, DHHS was concerned that Angel wished to homeschool Moira in order to limit the adults Moira could communicate with or confide in. The caseworker testified that when Cassandra was in Angel's custody, "[s]he would go periods of time being homeschooled and then she would be in traditional school, and then she'd go back to homeschooling, so it was very inconsistent." The caseworker expressed her opinion that academically and socially, it was in Moira's best

interests to remain in a traditional school setting, rather than a homeschool environment controlled by Angel.

In an order issued on July 9, 2014, the court found that Angel was not cooperating with DHHS and had not taken responsibility for the improper discipline of Cassandra. It also found that Angel had made "minimal progress" to alleviate the causes of the adjudication. It ordered both Angel and Moira to continue in individual therapy. In addition, it ordered that Moira "shall continue to be enrolled in an educational program as arranged or approved by [DHHS] and shall not be home schooled at this time, pending further order of this Court." In the same order, it set the next review hearing in the case for January 26, 2015.

Angel appealed from this order, alleging it improperly infringed on her right to educate Moira as she chose. The Nebraska Court of Appeals issued an order to show cause as to why the case should not be dismissed for lack of jurisdiction. It questioned both whether the prohibition against homeschooling was a new order in the case and, if it was, whether it was an order affecting a substantial right in a special proceeding that was subject to appeal. After finding that cause had been shown, the Court of Appeals ordered the parties to address the jurisdictional issue in their briefs. We subsequently moved the case to our docket on our own motion pursuant to our authority to regulate the caseloads of the appellate courts of this state.[1]

## ASSIGNMENTS OF ERROR

Angel assigns that the juvenile court erred in (1) prohibiting her from homeschooling Moira and (2) ordering that Moira continue to be enrolled in an educational program arranged or approved by DHHS.

## STANDARD OF REVIEW

[1] An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. When the evidence is in conflict,

---

[1] Neb. Rev. Stat. § 24-1106(3) (Reissue 2008).

however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other.[2]

## ANALYSIS

### Jurisdiction

[2-5] The order from which this appeal was taken was the first time that the juvenile court had specifically prohibited Angel from homeschooling Moira. The State contends that it nevertheless was not a final order for purposes of appeal. In a juvenile case, as in any other appeal, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.[3] For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the court from which the appeal is taken.[4] Among the three types of final orders which may be reviewed on appeal is an order that affects a substantial right made during a special proceeding.[5] A proceeding before the juvenile court is a special proceeding for appellate purposes.[6] Therefore, we must consider whether the order of the juvenile court which prohibited Angel from home-schooling Moira affected a substantial right.

[6,7] Whether a substantial right of a parent has been affected by an order in juvenile court litigation is dependent upon both the object of the order and the length of time over which the parent's relationship with the juvenile may reasonably be expected to be disturbed.[7] The U.S. Supreme Court has clearly established that parents have a fundamental liberty interest in directing the education of their children.[8] Thus, there

---

[2] *In re Interest of Nicole M.*, 287 Neb. 685, 844 N.W.2d 65 (2014); *In re Interest of Edward B.*, 285 Neb. 556, 827 N.W.2d 805 (2013).

[3] *In re Interest of Danaisha W. et al.*, 287 Neb. 27, 840 N.W.2d 533 (2013).

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] See, *Troxel v. Granville*, 530 U.S. 57, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000); *Meyer v. Nebraska*, 262 U.S. 390, 43 S. Ct. 625, 67 L. Ed. 1042 (1923).

can be no doubt that the object of the July 9, 2014, order is of sufficient importance to affect a substantial right.

[8] The issue, then, is the length of time over which Angel's ability to homeschool Moira may reasonably be expected to be disturbed. Orders which temporarily suspend a parent's custody, visitation, or education rights for a brief period of time do not affect a substantial right and are therefore not appealable.[9] For example, in *In re Interest of Danaisha W. et al.*,[10] we held that an order imposing restrictions on a parent's visitation rights was temporary in nature and therefore did not affect a substantial right so as to be appealable when it was in effect only until a hearing on a motion to terminate parental rights, which was scheduled for approximately 5 weeks later. Similarly, in *In re Guardianship of Sophia M.*,[11] we held an order which denied a parent visitation rights pending a guardianship hearing 3 weeks later was not of sufficient duration to affect a substantial right.

The Court of Appeals recently relied in part upon this precedent in *In re Interest of Nathaniel P.*[12] In that case, a juvenile court entered an order which "'suspended'" the mother's right to direct the child's education "'at least on a temporary basis at this time.'"[13] Although the next scheduled review hearing was almost 6 months later, the Court of Appeals construed the order as providing a means for the parent to regain her education rights before the review hearing by participating in rehabilitative services, and it thus concluded that it was not a final order, because it was "expected to disturb [the parent's] education rights for a relatively short period of time."[14] It therefore dismissed the appeal, and neither party sought further review by this court.

---

[9] See *In re Interest of Nathaniel P.*, 22 Neb. App. 46, 846 N.W.2d 681 (2014).

[10] *In re Interest of Danaisha W. et al.*, *supra* note 3.

[11] *In re Guardianship of Sophia M.*, 271 Neb. 133, 710 N.W.2d 312 (2006).

[12] *In re Interest of Nathaniel P.*, *supra* note 9.

[13] *Id.* at 48, 49, 846 N.W.2d at 683, 684 (emphasis omitted).

[14] *Id.* at 52, 846 N.W.2d at 686.

There is tension between the reasoning of *In re Interest of Nathaniel P.* and our holding in *In re Interest of Karlie D.*,[15] in which we determined that the ability of a juvenile court to change conditions of an adjudicated juvenile's custody or care "has no bearing on whether the court's order is final and appealable." And neither the language of the order in this case nor the context in which it was entered denotes a temporary interruption of Angel's right to direct Moira's education. The juvenile court's July 9, 2014, order provided that Moira "shall not be home schooled at this time, pending further order of this Court." The order gave no indication that the court would revisit this issue prior to the next review hearing scheduled for January 26, 2015, approximately 6 months in the future. This is a considerably longer duration of time than the 5 weeks and 3 weeks we characterized as temporary in *In re Interest of Danaisha W. et al.* and *In re Guardianship of Sophia M.* And because juvenile courts are required to review the cases of juveniles adjudicated under § 43-247(3) every 6 months,[16] virtually no order would have a longer duration than that. The order challenged in this appeal encompassed at least the first semester of Moira's school year and, potentially, an even longer period. We conclude that it was not a temporary order, but, rather, one which affected the parent's substantial right to direct the education of her child. It was therefore a final order, which we have jurisdiction to review.

## MERITS

[9,10] The substantial right of a parent in juvenile proceedings is a parent's fundamental, constitutional right to raise his or her child.[17] As we have noted above, this includes the parents' fundamental liberty interest in directing the education of their children.[18] But the State also has a right, derived from its parens patriae interest, to protect the welfare of its resident

---

[15] *In re Interest of Karlie D.*, 283 Neb. 581, 587, 811 N.W.2d 214, 221 (2012).

[16] See Neb. Rev. Stat. § 43-278 (Cum. Supp. 2014).

[17] *In re Interest of Karlie D., supra* note 15.

[18] See, *Troxel v. Granville, supra* note 8; *Meyer v. Nebraska, supra* note 8.

children.[19] In a juvenile abuse and neglect case such as this, a court must balance these sometimes competing interests so as to achieve a result that is in the best interests of the child. In other words, a parent's right to determine the educational needs of an adjudicated child is not absolute.

[11] When a court's order of disposition permits an adjudicated juvenile to remain in the parental home, a court has statutory authority to impose certain conditions, which may include requiring the parent to "[e]liminate the specified conditions constituting or contributing to the problems which led to juvenile court action," to "[t]ake proper steps to [e]nsure the juvenile's regular school attendance," and to "[c]ease and desist from specified conduct and practices which are injurious to the welfare of the juvenile."[20] Such terms and conditions "shall relate to the acts or omissions of the juvenile, the parent, or other person responsible for the care of the juvenile which constituted or contributed to the problems which led to the juvenile court action in such case."[21] Thus, a juvenile court has the discretionary power to prescribe a reasonable program for parental rehabilitation to correct the conditions underlying the adjudication.[22]

Angel argues that "the adjudicated issue in this matter has nothing to do with Moira's educational needs" and in fact "does not involve Moira specifically at all."[23] That is not accurate. In adjudicating both children, the juvenile court specifically found that Angel's inappropriate discipline of Cassandra "places both of the minor children at risk of harm." And, as noted, the record reflects that even after both children were adjudicated, DHHS received a report that Angel had disciplined Moira inappropriately by locking her in her bedroom.

---

[19] See, *In re Interest of Karlie D., supra* note 15; *In re Interest of Anthony G.*, 255 Neb. 442, 586 N.W.2d 427 (1998); *In re Interest of R.G.*, 238 Neb. 405, 470 N.W.2d 780 (1991), *disapproved on other grounds, O'Connor v. Kaufman*, 255 Neb. 120, 582 N.W.2d 350 (1998).

[20] Neb. Rev. Stat. § 43-288(1), (4), and (5) (Reissue 2008).

[21] § 43-288.

[22] See *In re Interest of C.D.C.*, 235 Neb. 496, 455 N.W.2d 801 (1990).

[23] Brief for appellant at 10.

The juvenile court permitted Angel to retain physical custody of Moira but placed legal custody of the child with DHHS. Under the Nebraska Juvenile Code, "[l]egal custody" has the same meaning as under the Parenting Act, i.e., "the authority and responsibility for making fundamental decisions regarding the child's welfare, including choices regarding education and health."[24] Thus, the juvenile court was entitled to give weight to the testimony of the DHHS caseworker that homeschooling by Angel was not in Moira's best interests. And this was the only evidence before the court on the issue of Moira's educational needs. Although Angel was present with her counsel at the hearings at which the caseworker testified, she did not testify or offer any evidence regarding her reasons for wanting to homeschool Moira or the specific manner in which she planned to do so.

In explaining its reasoning from the bench, the juvenile court stated that it was not in Moira's best interests to be homeschooled because of the adjudicated findings of inappropriate discipline by Angel "for which she continues to maintain a complete lack of understanding as to how inappropriate that was and . . . that that was a problematic way to deal with a child." The court stated its view that

> there's plenty of evidence before the Court that [Angel's] decision making with regard to parenting and discipline issues still places Moira at risk and I don't think it's in the child's best interest to have no other contacts with individuals and to have her mother be in charge of her educational setting as well. And I think it's not a huge inference for the Court to make that this is designed, in part, to isolate the child from others that she may be exposed to and talk to and I'm concerned about that. . . . I'm not dictating which . . . educational setting she needs to be in, but I am going to preclude her from being homeschooled at this point in time because I don't find that to be in her best interest.

Based upon our de novo review of the record, we reach the same conclusion. Cassandra and Moira were adjudicated on

---

[24] See Neb. Rev. Stat. §§ 43-245(13) and 43-2922(13) (Cum. Supp. 2014).

the basis of a finding that Angel's inappropriate discipline of Cassandra placed both children at risk of harm. There is some indication in the record that this discipline was intended as punishment for Cassandra's "back-talking and not doing her homework." Following adjudication, there was a subsequent incident of inappropriate discipline directed at Moira which prompted the juvenile court to specifically order that Angel "shall not lock Moira . . . in her room at any time." Given the court's finding that Angel had made "minimal progress . . . to alleviate the causes of the Court's adjudication," to which no exception was taken on appeal, and the recommendation of DHHS against homeschooling, the juvenile court was entirely justified in concluding that Moira's best interests would not be served by an educational setting which would place her under Angel's exclusive control with no opportunity for regular interaction with other adults interested in her welfare. The court's prohibition of homeschooling was directly related to the parental conduct which resulted in adjudication, and the court properly exercised its discretion to prohibit homeschooling as a part of a rehabilitation program to address such conduct.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the separate juvenile court.

AFFIRMED.