IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


IN RE INTEREST OF JOHN J. ET AL.


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


IN RE INTEREST OF JOHN J. ET AL., CHILDREN UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE AND CROSS-APPELLEE,

V.

TARA C., APPELLANT, AND BYRON J., APPELLEE AND CROSS-APPELLANT.


Filed June 25, 2019.    No. A-18-911.


Appeal from the Separate Juvenile Court of Douglas County: ELIZABETH G. CRNKOVICH, Judge. Appeal dismissed.

Kenneth Jacobs for appellant.

Thomas C. Riley, Douglas County Public Defender, and Claudia L. McKnight for appellee Byron J.


RIEDMANN, ARTERBURN, and WELCH, Judges.

RIEDMANN, Judge.

INTRODUCTION

Tara C. appeals, and Byron J. cross-appeals, the order of the separate juvenile court of Douglas County denying their motions for supervised visitation with their children. Byron also appeals the court's verbal suspension of his visitation rights. For the reasons stated below, we dismiss the appeal for lack of jurisdiction.

BACKGROUND

Tara and Byron are the biological parents of six children, five of whom are at issue in this case. In November 2016, the State filed a petition seeking to adjudicate the children under Neb.

- 1 -

Rev. Stat. § 43-247(3)(a) (Reissue 2016). The State alleged the children resided in a family home which was in a "filthy, unwholesome condition, which placed the children at risk for harm," and the parents failed to provide safe and stable housing. The children were adjudicated in January 2017.

At a subsequent review hearing held for Byron in April 2018, the juvenile court ordered a concurrent plan of reunification and adoption. The court also ordered Byron to complete individual therapy, participate in a batterer's intervention program, maintain a legal source of income and suitable housing, and refrain from drugs and alcohol. The order further provided that Byron should have reasonable rights of visitation with the children, with the visits to exclude Tara.

Later in April 2018, a review hearing was held for Tara. Although Byron attended his review hearing just a week earlier, he appeared at Tara's hearing without his attorney. Tara's attorney explained that Tara had some medical issues that required surgery and therefore, there had been some delay in progress. He reported, however, that the parties had obtained suitable housing where visits could be held instead of in the community so the visits should be less chaotic. Following the receipt of several exhibits and the recommendation from the caseworker that Tara visit with the children in the home without Byron present, the court stated,

> These visits should be stopped. And the chaos had nothing to do with the fact that they were in the community and everything to do with an inability to parent, a refusal on the part of both parents to take any direction.
>
> . . . .
>
> . . . I understand your surgery. But this condition that brought you to court existed long before that.
>
> And you, sir. Until all drug tests are made, all appointments are kept, all therapy is kept, there is no way I can continue these visits under these chaotic and horrific circumstances that we have been allowing to happen. . . .
>
> There will be no visitation at this time, . . . until such time as [Tara] and [Byron] comply with court orders, which will be key to assisting them in parenting. There is not only no parenting going on in visits. There's -- there's just chaos.

The court set the next review hearing for June 20, 2018. The court did not file its written order on the April review hearing until May 10. In that order, the court indicated that Tara was to have reasonable rights of visitation, and the visits were to exclude Byron. On June 8, the court issued a nunc pro tunc order consistent with its oral pronouncement that Tara shall have no visitation with the children until further order of the court. Neither written order addressed Byron's right of visitation. In the interim, the State filed a motion for termination of parental rights, a copy of which is not in our record.

In August 2018, Tara filed a motion for supervised visitation. Although she phrased it in terms of a joint motion of both parents, the court would not acknowledge it as a joint motion at the hearing, Byron's attorney made an oral motion for Byron to also have supervised visitation. The parents' caseworker testified that since the court's April order suspending visitation, Tara had been attending family therapy with the children. The caseworker also indicated that Tara had been compliant with her required drug testing because she tested positive only for a prescribed

medication, benzodiazepine. Additionally, the parents lived together and the caseworker found their home was suitable for visitation.

However, the caseworker also testified that she had not received any confirmation that Tara had completed individual counseling. Further, she indicated that she had concerns about the court granting Tara visitation because nothing had been done to address the chaos that led to the court's suspension of visits. She expanded on the problems which led to the suspension, stating that Tara would not allow the children to leave with visitation workers, would have a friend follow the visitation workers home, would scream at the children in stores, and would not follow redirection of the visitation workers.

The caseworker testified that Byron had also been attending family therapy every other week and had completed a batterer's intervention program. She stated that, prior to his visitation rights being suspended, Byron's visits occurred at the home, and she had concerns with him being overwhelmed managing all the children during the visits.

On cross-examination, the caseworker admitted that family therapy sessions had recently begun so Byron had completed only two sessions, and Tara had completed only four. The caseworker explained that the family therapy sessions were separate for Tara and Byron because there were past domestic violence concerns in their home. Further, neither parent had addressed parenting strategies in their family therapy sessions, nor had the children addressed the trauma they experienced as a result of the disruptions in the family home that caused their removal. Neither parent was involved with individual therapy. The caseworker also stated that there were concerns with Byron accepting redirection from the visitation supervisors during his visits with the children, which is reflected in the court report received into evidence at Byron's April review hearing which indicated that Byron did not believe the visitation workers had the right or knowledge on how to teach him to parent. The attorney for the Department of Health and Human Services requested that the court take judicial notice of "the file" and "specifically the motion for termination of parental rights and the second motion for termination of parental rights, which were filed on or about May 15th of 2018." The court agreed to do so, but neither motion is contained in our record.

The juvenile court denied the parents' motions for supervised visits. In denying the motions, the court noted that neither Tara nor Byron were in individual therapy and that the reason for the suspension of visits had to do with Tara's threatening and aggressive behavior, which was not going to be corrected in family therapy. The court also expressed concern with Tara's use of benzodiazepine despite her having a prescription for it. The court stated that the parents' progress in the case plan was coming very late in the process, and it was therefore "best to proceed and adjudicate the motions that are before the Court. And then the Court will revisit the issue of visitation after that." The court filed its written order on August 23, 2018, and both parents appeal.

## ASSIGNMENTS OF ERROR

Tara and Byron assign, consolidated and restated, that the juvenile court erred in denying their motion for supervised visitation. Byron separately assigns as error the court's verbal suspension of his visitation rights.

- 3 -

STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of Sloane O.*, 291 Neb. 892, 870 N.W.2d 110 (2015). When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one versions of the facts over the other. *Id*.

ANALYSIS

In a juvenile case, as in any other appeal, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *In re Interest of Cassandra B. & Moira B.*, 290 Neb. 619, 861 N.W.2d 398 (2015). For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the court from which the appeal is taken. *Id*. Among the three types of final orders which may be reviewed on appeal is an order that affects a substantial right made during a special proceeding. *Id*.

It is well established that a judicial determination made following an adjudication in a special proceeding which affects the substantial rights of parents to raise their children is a final, appealable order. See, *In re Interest of Clifford M. et al.*, 258 Neb. 800, 606 N.W.2d 743 (2000); *In re Interest of Tabatha R.*, 255 Neb. 818, 587 N.W.2d 109 (1998). Accordingly, to determine the appealability of the court's written August 2018 order denying the parents' motions for supervised visitation and the April 2018 verbal order suspending Byron's visitations, it is necessary for us to consider the nature of the court's orders denying visitation, and what parental rights, if any, were affected by these orders.

*August 2018 Order Denying Parents' Motion for Supervised Visitations.*

Both Tara and Byron appeal the juvenile court's order denying their motions for supervised visitations. Given the facts of this case, we determine that the denial of their motions for visitation did not affect a substantial right, and therefore, the order is not appealable.

In *In re Interest of Clifford M. et al., supra*, the juvenile court denied the mother's motion for visitation. At the time the motion was filed, the children had been adjudicated and a rehabilitation plan was in effect with a permanency objective of reunification. A motion for termination of parental rights was pending. The Nebraska Supreme Court determined that it lacked jurisdiction to hear the appeal because the order denying visitation did not affect the mother's substantial right. *Id*. In reaching this decision, the Supreme Court noted that the terms of the mother's rehabilitation and potential reunification with her children were outlined in rehabilitation plans that had been adopted by the juvenile court over several years and remained in effect. Because reunification did not hinge solely on whether she had visitation with her children, but, rather, upon whether she complied with the goals of the reunification plan, the court concluded that she remained free to regain visitation upon a showing that such visitation was in the best interests of the children. And because the motion for termination of her parental rights was based upon allegations of the mother's faults and habits, rather than abandonment, the "denial of visitation in the context of the instant case did not affect a substantial parental right of [the mother] to raise her children." *Id*. at 809, 606 N.W.2d at 750.

Here, in ruling on the motions for supervised visitation in the present case, the juvenile court stated that it remained concerned about Tara's continued use of benzodiazepine and the absence of individual therapy for either parent to correct their parenting skills. From what we can glean from our record, the rehabilitation plans remained in effect with reunification as the permanency plan for Tara and reunification and adoption as the plan for Byron. The success of these parents being reunified with their children hinges on their progress in meeting the goals of the reunification plan. As in *In re Interest of Clifford M. et al., supra*, the denial of the motion for supervised visitation did not terminate visitation; rather, the parents remain free to regain visitation by complying with the rehabilitation plan. We therefore conclude that the August 2018 order denying the parents' request for supervised visitation is not a final appealable order.

We recognize that the Supreme Court has stated that "our jurisprudence allows for recognition that a no contact or a no visitation order can significantly impact parental rights and that a no visitation order can affect substantial rights. Indeed, it has been held that an order terminating visitation can be a final order." *Id*. at 808-09, 606 N.W.2d 749. We are also mindful, however, that in determining whether an order affects a substantial right, a court is to consider both the object of the order and the length of time over which the parent's relationship with the juvenile may reasonably be expected to be disturbed. See *In re Interest of Cassandra B. & Moira B.*, 290 Neb. 619, 861 N.W.2d 398 (2015).

Here, the court stated that it was "best to proceed and adjudicate the motions that are before the Court. And then the Court will revisit the issue of visitation after that." While our record does not indicate specifically when the issue of visitation will be revisited, it is clear that the denial of the motion was temporary in nature and subject to later review. Orders which temporarily suspend a parent's visitation rights do not affect a substantial right and are therefore not appealable. *In re Interest of Danaisha W. et al.*, 287 Neb. 27, 840 N.W.2d 533 (2013). The court took judicial notice of the motions for termination of parental rights which were stated to have been filed on May 15, 2018. The time between the filing of a motion to terminate parental rights and submission or decision should be no more than 90 days, unless service upon the parent is delayed. Neb. Ct. R. § 6-104(3) (2017). Absent anything to the contrary in our record, a hearing on these motions is likely to have been occurring near the time of the hearing on visitation. The denial of visitation could be expected to affect Tara and Byron's relationship with the children only until such time as the juvenile court ruled on the State's motion to terminate their parental rights.

We determine that the August 23, 2018, order related to visitation did not affect a substantial right and was not a final, appealable order. Consequently, we dismiss the appeal for lack of jurisdiction.

*Juvenile Court's Verbal Suspension of Byron's Visitation Rights.*

Byron appeals the juvenile court's verbal suspension of his visitation rights announced at Tara's April 2018 review hearing. We find that there was not an appealable order issued by the juvenile court.

Because only Byron appeals the court's verbal order issued in April 2018 suspending the parents' visitation rights, we address the court's order as it pertains to him.

Neb. Rev. Stat. § 25-1301 (Reissue 2016) sets forth two ministerial requirements for a final judgment. The first, found at § 25-1301(2), is rendition of the judgment, defined as the act of the court or a judge thereof "in making and signing a written notation of the relief granted or denied in an action." The second ministerial step for a final judgment is found in § 25-1301(3), which provides that "entry" of a "final order occurs when the clerk of the court places the file stamp and date upon the judgment." In short, final orders must be signed by the judge as well as file stamped and dated by the clerk.

Neb. Rev. Stat. § 25-1912(2) (Reissue 2016) provides:

A notice of appeal or docket fee filed or deposited after the announcement of a decision or final order but before the entry of the judgment, decree, or final order shall be treated as filed or deposited after the entry of the judgment, decree, or final order and on the date of entry.

This implies that even where there has been an oral pronouncement of the decision, an order must still be entered before there can be appellate review. In the present case, there was never a written order signed by the judge stating that Byron's visitation was suspended following the court's oral pronouncement in court. Because there was never a written order, the clerk of the court never entered a judgment. Therefore, there was no appealable order entered from the court's oral pronouncement suspending Byron's visitation. The court's subsequent nunc pro tunc order entered in June 2018 which suspended Tara's visitations did not include any reference to Byron; thus, it was not a final, appealable order from which Byron could appeal.

At Tara's review hearing, the court stated, "There will be no visitation at this time, until -- and I am happy to set it for a hearing for [Byron] when his attorney can be here." However, there is no indication that Byron requested a hearing with the juvenile court regarding his visitation rights. It was incumbent on Byron to request a follow up hearing with the juvenile court, or to request that an order be issued. He did neither. As such, the record does not indicate that there is an appealable order resulting from the court's verbal suspension of Byron's visitation rights. Therefore, we do not have jurisdiction to review the verbal suspension.

## CONCLUSION

For the reasons set forth above, we dismiss the appeal for lack of jurisdiction.

APPEAL DISMISSED.