Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/09/2016 09:08 AM CST

In re Interest of Sandrino T., a child
under 18 years of age.
State of Nebraska, appellee, v.
Sandrino T., appellant.

In re Interest of Remus M., a child
under 18 years of age.
State of Nebraska, appellee, v.
Remus M., appellant.

___ N.W.2d ___

Filed December 9, 2016.    Nos. S-15-1084, S-15-1087.

1. **Judgments: Jurisdiction.** A jurisdictional issue that does not involve a factual dispute presents a question of law.
2. **Juvenile Courts: Jurisdiction: Appeal and Error.** In a juvenile case, as in any other appeal, before reaching the legal issues presented for review it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.
3. **Final Orders: Appeal and Error.** Under Neb. Rev. Stat. § 25-1902 (Reissue 2016), an appellate court may review three types of final orders: (1) an order affecting a substantial right in an action that, in effect, determines the action and prevents a judgment; (2) an order affecting a substantial right made during a special proceeding; and (3) an order affecting a substantial right made on summary application in an action after a judgment is rendered.
4. **Words and Phrases.** A substantial right is an essential legal right, not a mere technical right.
5. **Final Orders: Appeal and Error.** A substantial right is affected if an order affects the subject matter of the litigation, such as diminishing a claim or defense that was available to an appellant before the order from which an appeal is taken.

6. ____: ____. A substantial right is not affected for purposes of appeal when that right can be effectively vindicated in an appeal from the final judgment.

7. **Constitutional Law: Juvenile Courts: Criminal Law.** There is no constitutional right to proceed in juvenile court rather than criminal court.

8. **Constitutional Law: Juvenile Courts: Legislature.** Access to juvenile court is a statutory right granted and qualified by the Legislature; it is not a constitutional imperative.

Appeals from the Separate Juvenile Court of Lancaster County: REGGIE L. RYDER, Judge. Appeals dismissed.

Joe Nigro, Lancaster County Public Defender, and George C. Dungan for appellant in No. S-15-1084.

Steffanie Garner Kotik, of Kotik & McClure Law, for appellant in No. S-15-1087.

Joe Kelly, Lancaster County Attorney, and Christopher M. Reid for appellee.

HEAVICAN, C.J., WRIGHT, MILLER-LERMAN, CASSEL, STACY, KELCH, and FUNKE, JJ.

MILLER-LERMAN, J.

## NATURE OF CASE

Sandrino T. and Remus M. were each charged in the separate juvenile court of Lancaster County with six counts in connection with automated teller machine (ATM) "skimming." In each case, the State filed a motion to transfer to county court. A consolidated hearing was held on the motions to transfer, and after the hearing, the juvenile court granted the motions in separate orders. Both Sandrino and Remus appeal. Sandrino's appeal is case No. S-15-1084. Remus' appeal is case No. S-15-1087. We consolidate the cases on appeal for disposition. The primary issue before us is whether the orders transferring the cases from juvenile court to county court are final and

appealable. We determine that the transfer orders are not final orders, and we therefore dismiss each appeal based on lack of jurisdiction.

## STATEMENT OF FACTS

On September 28, 2015, the State filed separate petitions in juvenile court against Sandrino and Remus. The petitions alleged that they committed three counts of attempted unlawful manufacture of a financial transaction device and three counts of criminal possession of a forgery device. The alleged violations were classified as three Class IIIA felonies and three Class IV felonies.

The charges arose from Sandrino's and Remus' alleged involvement with an operation that used skimming devices and cameras on ATM's to collect credit card, debit card, and personal identification numbers from cards that are inserted into an ATM. The information thus obtained can then be utilized to create a "clone" card that could be used to withdraw money from an ATM or purchase items in a store or online, or the obtained information could be sold to another party. According to the State's evidence, the operation was conducted nationwide by a group made up primarily of Romanian citizens who were brought to the United States for the purpose of furthering the operation.

Dental examinations were conducted on Sandrino and Remus to help narrow down their ages. Based on the results of the dental examinations, Remus was between 16½ and 17 years old and Sandrino was between 16½ and 17½ years old, although Sandrino could possibly have been 18 years old.

After filing the petitions, the State moved to transfer each case to county court for arraignment and further proceedings under the criminal code. See Neb. Rev. Stat. § 43-274(5) (Reissue 2016). After a consolidated evidentiary hearing, the juvenile court granted the motions.

Sandrino and Remus appeal from the orders of the juvenile court which granted the State's motions to transfer the cases from juvenile court to county court.

## ASSIGNMENTS OF ERROR

Sandrino and Remus each claim that the juvenile court erred when it determined that the evidence was sufficient to transfer their cases from juvenile court to county court.

## STANDARD OF REVIEW

[1] A jurisdictional issue that does not involve a factual dispute presents a question of law. *In re Adoption of Jaelyn B.*, 293 Neb. 917, 883 N.W.2d 22 (2016).

## ANALYSIS

The cases against Sandrino and Remus were brought in juvenile court pursuant to Neb. Rev. Stat. § 43-246.01 (Reissue 2016). Section 43-246.01(2) grants original jurisdiction to the juvenile court over juvenile offenders who are "(a) . . . sixteen years of age" and committed a misdemeanor or "(b) . . . fourteen years of age or older" and committed a felony lesser in grade than a Class IIA. According to the record, both Sandrino and Remus were at least 16 years old. Six allegations were brought against each juvenile; three of the allegations were Class IIIA felonies, and three were Class IV felonies. Therefore, both Sandrino and Remus were in the category of juveniles whose cases are initiated in juvenile court under § 43-246.01(2).

Although actions against juvenile offenders who fall under § 43-246.01(2) must always be initiated in juvenile court by filing a juvenile petition, they are subject to transfer to county or district court for further proceedings under the criminal code. § 43-246.01(2). In this opinion, we sometimes refer to county and district courts as the "criminal court." As noted, the State filed motions to transfer each case to county court under § 43-274(5) and the juvenile court granted the

motions. These are the orders from which Sandrino and Remus appeal.

[2] In a juvenile case, as in any other appeal, before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. See *In re Interest of Cassandra B. & Moira B.*, 290 Neb. 619, 861 N.W.2d 398 (2015). Neb. Rev. Stat. § 43-2,106.01(1) (Reissue 2016) gives an appellate court jurisdiction to review "[a]ny final order or judgment entered by a juvenile court . . . ." Whether we have jurisdiction to review the juvenile court's transfer orders at this point in the proceedings depends on whether Sandrino and Remus have appealed from a final order or judgment. No party argues that the transfer orders were judgments, so the question is whether the transfer orders are final orders.

Both Sandrino and Remus contend that the transfer orders in these cases are final, appealable orders. They each argue that the Legislature effectively redefined transfer orders as final orders when it enacted 2014 Neb. Laws, L.B. 464. We reject this argument.

We recently provided an overview of L.B. 464 and its effect on various statutes in *In re Interest of Tyrone K., ante* p. 193, ___ N.W.2d ___ (2016). One such statute is Neb. Rev. Stat. § 29-1816 (Reissue 2016), which generally concerns transfers from county and district court to juvenile court. As we observed in *In re Interest of Tyrone K.*, prior to L.B. 464, § 29-1816 (Cum. Supp. 2012) specifically provided that the county or district court's ruling on a motion to transfer an action to juvenile court "shall not be a final order for the purpose of enabling an appeal." L.B. 464 removed the quoted language, and § 29-1816 (Reissue 2016) is now silent as to the finality of an order ruling on a motion to transfer a case from criminal court to juvenile court. *In re Interest of Tyrone K., supra*. As noted, § 43-274(5) concerns transfers from juvenile court to county or district court. Section 43-274(5), the new statute enacted by L.B. 464,

is silent regarding whether a juvenile court's order ruling on a motion to transfer an action from juvenile court to county or district court is a final order.

Sandrino and Remus argue that by deleting the nonfinal order language from § 29-1816, the Legislature intended to authorize interlocutory appeals from orders ruling on motions to transfer from criminal court to juvenile court, and they further argue that we should judicially construe § 43-274(5) to also authorize interlocutory appeals from orders transferring cases from juvenile court to criminal court. As explained below, we do not adopt Sandrino's and Remus' suggested reading of the transfer statutes.

We recently addressed arguments comparable to those advanced here in *In re Interest of Tyrone K., supra*, a case with similar procedural facts. In that case, a petition was filed against the appellant in juvenile court and the State filed a motion to transfer to criminal court. The appellant filed an appeal from the order which granted the motion to transfer. With respect to the appellant's argument that by virtue of L.B. 464, the Legislature intended to allow for interlocutory appeals of orders transfering a case from juvenile court to criminal court, we stated:

> Within the proper confines of established rules of statutory construction, we find nothing which permits the conclusion that the Legislature intended, by either silence or omission, to affirmatively confer a statutory right of interlocutory appeal from an order on a motion to transfer a case from criminal court to juvenile court, or vice versa. We conclude that when the Legislature removed the final order language from § 29-1816 without adding any different language pertaining to finality, it left to the judiciary the familiar task of applying Nebraska's final order statute, § 25-1902, to determine whether transfer orders are final and appealable.

*In re Interest of Tyrone K., ante* at 204, ___ N.W.2d at ___.

[3] Under Neb. Rev. Stat. § 25-1902 (Reissue 2016), an appellate court may review three types of final orders: (1) an order affecting a substantial right in an action that, in effect, determines the action and prevents a judgment; (2) an order affecting a substantial right made during a special proceeding; and (3) an order affecting a substantial right made on summary application in an action after a judgment is rendered. See *Cattle Nat. Bank & Trust Co. v. Watson*, 293 Neb. 943, 880 N.W.2d 906 (2016). The orders at issue in the instant appeals neither determined the actions and prevented judgments nor were made on summary applications after judgments. As such, the transfer orders are final and appealable only if they were made during special proceedings and affected substantial rights.

The transfer orders were issued by the juvenile court, and as a general rule, juvenile delinquency proceedings are considered special proceedings. *In re Interest of Tyrone K., ante* p. 193, ___ N.W.2d ___ (2016). For purposes of these appeals, we assume without deciding that the transfer orders at issue were made in a special proceeding. See *id*. Therefore, we will focus our analysis on whether the transfer orders affected substantial rights.

[4-6] Sandrino and Remus generally argue that their substantial rights were affected because if they are not allowed to file interlocutory appeals of the transfer orders, they will lose their rights to appeal the rulings and they will be prohibited from accessing the rehabilitative services of the juvenile court in a timely manner. We have stated that a substantial right is an essential legal right, not a mere technical right. *Id.*; *In re Adoption of Madysen S. et al.*, 293 Neb. 646, 879 N.W.2d 34 (2016). A substantial right is affected if an order affects the subject matter of the litigation, such as diminishing a claim or defense that was available to an appellant before the order from which an appeal is taken. *In re Interest of Tyrone K., supra*. A substantial right is not affected for purposes of appeal

when that right can be effectively vindicated in an appeal from the final judgment. *Id*.

Sandrino and Remus argue that if they are not allowed to immediately appeal from the transfer orders, they would not be able to appeal the transfer orders at the conclusion of the criminal proceedings, because the language of neither § 29-1816 nor § 43-274(5) would allow for such an appeal at the conclusion of the criminal proceedings. Because an appeal is available, we disagree. In *In re Interest of Tyrone K.*, we concluded that "the fact that the statutory scheme enacted by L.B. 464 contains no specific provision regarding appellate review of juvenile transfer orders does not mean that transfer orders are somehow immune from appellate review on direct appeal after final judgment." *Ante* at 207-08, ___ N.W.2d at ___.

[7] Sandrino and Remus further argue that they have a substantial right to proceed in juvenile court and receive timely access to the rehabilitative services available in that forum. We rejected a similar argument in *In re Interest of Tyrone K., ante* p. 193, ___ N.W.2d ___ (2016). In *In re Interest of Tyrone K.*, we observed that in *State v. Meese*, 257 Neb. 486, 599 N.W.2d 192 (1999), we had determined that there is no constitutional right to proceed in juvenile court rather than criminal court. We had further observed in *Meese* that on several occasions, we had waited until after any conviction and sentence to review the validity of a criminal trial court's decision denying a juvenile's motion to transfer from criminal court to juvenile court. We also noted in *In re Interest of Tyrone K., ante* at 209, ___ N.W.2d at ___, that we had explicitly stated in *Meese* that "'the loss of access to juvenile court itself does not affect a substantial right.'"

[8] Our reasoning in *Meese* was not affected by the changes in the statutory scheme by L.B. 464, and we stated in *In re Interest of Tyrone K.* that "[e]ven after L.B. 464, access to juvenile court is a statutory right granted and qualified by the Legislature; it is not a constitutional imperative." *Ante* at

211, ___ N.W.2d at ___. Accordingly, we concluded in *In re Interest of Tyrone K.* that the transfer of the appellant's case from juvenile court to criminal court did not affect a substantial right. We similarly conclude in these appeals that the transfer of Sandrino's and Remus' cases from juvenile court to county court did not affect their substantial rights and that the orders are not appealable at this time.

## CONCLUSION

For the reasons stated above, we conclude that the juvenile court's orders transferring Sandrino's and Remus' cases from juvenile court to county court are not final, appealable orders. Accordingly, we lack jurisdiction, do not reach the merits of these appeals, and dismiss these appeals.

APPEALS DISMISSED.