Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/08/2019 08:08 AM CST

- 226 -

Nebraska Supreme Court Advance Sheets
302 Nebraska Reports
IN RE INTEREST OF KAMILLE C. & KAMIYA C.
Cite as 302 Neb. 226

In re Interest of Kamille C. and Kamiya C.,
children under 18 years of age.
Nateesha B., appellant, v.
Samuel C., appellee.

___ N.W.2d ___

Filed February 8, 2019.    No. S-18-651.

1. **Jurisdiction: Appeal and Error.** When a jurisdictional question does not involve a factual dispute, its determination is a matter of law, which requires an appellate court to reach a conclusion independent of the decision made by the lower court.

2. **Juvenile Courts: Jurisdiction: Statutes.** As a statutorily created court of limited and special jurisdiction, a juvenile court has only such authority as has been conferred on it by statute.

3. **Juvenile Courts: Jurisdiction: Child Custody: Parental Rights.** During proceedings under Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016), the juvenile court has broad jurisdiction under Neb. Rev. Stat. § 43-284 (Reissue 2016) regarding placement, but its discretion is governed by the parental preference doctrine that holds that in a child custody controversy between a biological parent and one who is neither a biological nor adoptive parent, the biological parent has a superior right to the custody of the child.

4. **Juvenile Courts: Jurisdiction.** The juvenile court loses jurisdiction to order compliance with dispositional plans once it has terminated jurisdiction over the juvenile and the parties.

5. **Juvenile Courts: Statutes: Legislature: Child Custody.** In enacting Neb. Rev. Stat. § 43-246.02 (Supp. 2017), authorizing bridge orders, the Legislature crafted a solution for temporary continuity when the child is no longer in need of the juvenile court's protection; the juvenile court has made, through a dispositional order, a custody determination in the child's best interests; and the juvenile court does not wish to enter a domestic relations custody decree under the power granted by Neb. Rev. Stat. § 25-2740(3) (Reissue 2016).

- 227 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
302 NEBRASKA REPORTS
IN RE INTEREST OF KAMILLE C. & KAMIYA C.
Cite as 302 Neb. 226

6. **Juvenile Courts: Courts: Jurisdiction: Child Custody.** A juvenile court can ensure through a bridge order that during the transfer of jurisdiction to the district court for entry of a custody decree, the custody arrangement that the juvenile court has found to be in the child's best interests remains in place.

7. **Juvenile Courts: Courts: Legislature: Jurisdiction: Child Custody: Time.** The Legislature, through enacting Neb. Rev. Stat. § 43-246.02 (Supp. 2017), bridged the gap that would otherwise occur between the time that the juvenile court terminated its jurisdiction and the district court picked up the case, by avoiding a reversion, before district court proceedings can be commenced, back to whatever custody arrangement controlled before adjudication.

8. **Juvenile Courts: Final Orders: Parental Rights.** Juvenile court proceedings are special proceedings, and an order in a juvenile special proceeding is final and appealable if it affects a parent's substantial right to raise his or her child.

9. **Final Orders: Words and Phrases.** A substantial right is an essential legal right, not a mere technical right.

10. **Final Orders.** It is not enough that the right itself be substantial; the effect of the order on that right must also be substantial.

11. **Final Orders: Appeal and Error.** Most fundamentally, an order affects a substantial right when the right would be significantly undermined or irrevocably lost by postponing appellate review.

12. ____: ____. If the right affected would not be significantly undermined by delaying appellate review, then the order falls under the general prohibition of immediate appeals from interlocutory orders. This general prohibition operates to avoid piecemeal appeals arising out of the same set of operative facts, chaos in trial procedure, and a succession of appeals in the same case to secure advisory opinion to govern further actions of the trial court.

13. **Constitutional Law: Child Custody: Parental Rights: Time.** Custody is generally considered an essential legal right implicating a parent's fundamental, constitutional right to raise his or her child, but the duration of a court's order is also relevant to whether an order affects a substantial right.

14. **Child Custody: Jurisdiction: Intent.** A bridge order is designed to preserve the status quo by continuing the placement with the noncustodial parent until the matter can be heard in district court, if either of the parties are dissatisfied with the custody decree that the district court enters in accordance with the bridge order.

15. **Final Orders.** An order merely preserving the status quo pending a further order is not final.

16. **Jurisdiction: Appeal and Error.** Immediate appellate review of a bridge order would undermine the rights affected more than it would vindicate them.
17. **Jurisdiction: Final Orders.** A bridge order is not final for purposes of Neb. Rev. Stat. § 25-1902 (Reissue 2016).

Appeal from the Separate Juvenile Court of Lancaster County: Linda S. Porter, Judge. Appeal dismissed.

Joy Shiffermiller, of Shiffermiller Law Office, P.C., L.L.O., for appellant.

Megan M. Zobel, of Anderson, Creager & Wittstruck, P.C., L.L.O., for appellee.

Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Freudenberg, J.

## NATURE OF CASE

This appeal involves a "bridge order," which was created by L.B. 180 in 2017,[1] and is codified in Neb. Rev. Stat. § 43-246.02 (Supp. 2017). Under § 43-246.02(1), a "juvenile court may terminate its jurisdiction under subdivision (3)(a) of section 43-247 by transferring jurisdiction over the juvenile's custody, physical care, and visitation to the district court through a bridge order," if certain criteria are met. A bridge order solely addresses matters of legal and physical custody and parenting time when a juvenile has been placed by the juvenile court with a legal parent.[2] The bridge order in this case was entered after the adjudication of five children under Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016), who had been in the mother's sole legal and physical custody. Two of those children had the same father, with whom they were placed during the ongoing juvenile proceedings. The bridge order gave

---

[1] 2017 Neb. Laws, L.B. 180, § 1 (eff. Aug. 24, 2017).

[2] See § 43-246.02(1)(c) and (4).

the father legal and physical custody, with substantial visitation by the mother. The mother contests the bridge order, arguing that it was inappropriate under the circumstances, because by the time the bridge order was entered, the Department of Health and Human Services (DHHS) had conceded that the children could safely be placed back in her care and custody. Because we determine that bridge orders are not final for purposes of Neb. Rev. Stat. § 25-1902 (Reissue 2016), we dismiss the appeal for lack of jurisdiction.

## BACKGROUND

On July 11, 2017, a petition was filed under § 43-247(3)(a) to adjudicate Kamille C. and Kamiya C., as well as three siblings who are not the subject of this appeal. The children resided with their mother, Nateesha B. In a prior proceeding, Samuel C. had been determined to be the biological father of Kamille and Kamiya and had been ordered to pay child support. The petition alleged that Nateesha had been found in possession of controlled substances after a traffic stop. Kamille and Kamiya were 5 years old at the time.

On July 13, 2017, the juvenile court issued an ex parte order of temporary emergency custody of all five children with DHHS, which, after a hearing on July 19, the court ordered to be continuing.

Nateesha admitted the allegations in the petition, and the children were adjudicated on October 6, 2017. The court ordered that Kamille and Kamiya be physically placed in Samuel's home and that Nateesha be allowed to exercise reasonable rights of supervised parenting time. Samuel's child support payments were suspended during this time.

The dispositional order was issued on November 21, 2017. The court ordered that Kamille and Kamiya, as well as the other adjudicated children, remain in the temporary legal custody of DHHS, while Nateesha worked on a permanency plan for reunification. Kamille and Kamiya's placement was to continue with Samuel.

At a dispositional review hearing on January 10, 2018, the court ruled that the children should remain in the temporary legal custody of DHHS and that Kamille and Kamiya should remain in their placement with Samuel.

On April 24, 2018, pursuant to a motion by DHHS, the court ordered the placement change of one of Kamille and Kamiya's siblings from foster care back into Nateesha's home, subject to further hearing at the request of any party. In the affidavit in support of the motion, DHHS noted that it had also requested that another sibling be placed back with Nateesha, but that a hearing on the request had not yet been held. A DHHS specialist averred that Nateesha had regularly complied with the permanency plan by submitting to drug testing and being negative for any and all substances during the prior 2 months. Additionally, Nateesha had been following the guidelines of her outpatient treatment and was doing well. The DHHS specialist described Nateesha as providing a "safe and stable home."

There are no further orders regarding Kamille and Kamiya's siblings in the appellate record.

Samuel moved for a bridge order under § 43-246.02, which would close the juvenile case as to Kamille and Kamiya and transfer jurisdiction over their physical care, custody, and parenting time to the district court. The motion alleged that the children were safely placed with Samuel, that there was not a district court order for custody in place, that there were no other related pending cases before the juvenile court, and that the juvenile court could safely close the juvenile case as to Kamille and Kamiya once orders for custody, physical care, and parenting time were in place.

The court held a hearing on May 24, 2018, on Samuel's motion for a bridge order. According to testimony at the hearing, approximately 1 month prior, Nateesha had begun having unsupervised visitation with Kamille and Kamiya, with periodic drop-ins, on two week nights a week. She had begun having unsupervised visitation on the weekends, with

periodic drop-ins, approximately 2 weeks prior to the hearing. Transportation for visitation was provided by DHHS.

Evidence submitted at the hearing demonstrated that by March 2018, Nateesha's home was considered to be safe and drug free. However, a child and family services specialist with DHHS who was assigned to Kamille and Kamiya's case testified that she believed it was in the children's best interests for Samuel to have the legal and physical custody of the children, with visitation rights for Nateesha. The specialist testified that the children had been living with Samuel full time for approximately 1 year and had adjusted well and formed a strong bond with Samuel.

On May 29, 2018, the court issued, as to Kamille and Kamiya, a bridge order and an attached parenting plan. The court found that it was in Kamille and Kamiya's best interests to have their legal and physical custody with Samuel and that the juvenile court's jurisdiction over Kamille and Kamiya be transferred to the district court. The parenting plan provided that Samuel have primacy in the choices regarding Kamille and Kamiya's education, religious upbringing, and medical needs. Nateesha was to have visitation with Kamille and Kamiya every Tuesday commencing at 4:30 p.m. and concluding at 7:30 p.m., every Wednesday commencing at 4 p.m. and concluding at 7:30 p.m., and every Friday commencing at 4:30 p.m. and concluding Sunday at 10 a.m.

The court scheduled the next dispositional review hearing for the other three adjudicated children on August 6, 2018.

Nateesha appeals from the bridge order.

## ASSIGNMENTS OF ERROR

Nateesha assigns, summarized, that the juvenile court erred by (1) denying her due process right to an impartial decisionmaker by adducing evidence and thereby acting as an advocate for one of the parties, (2) receiving into evidence a report of the Foster Care Review Board over her hearsay objection, (3) finding that the bridge order was necessary, and (4) finding

that the best interests of the children would be served by plac-
ing legal and physical custody with Samuel.

## STANDARD OF REVIEW

[1] When a jurisdictional question does not involve a factual
dispute, its determination is a matter of law, which requires an
appellate court to reach a conclusion independent of the deci-
sion made by the lower court.[3]

## ANALYSIS

This appeal involves a "bridge order" entered pursuant to
§ 43-246.02, which was enacted through L.B. 180 in 2017.
Specifically, Nateesha challenges the domestic relations cus-
tody determination made in the bridge order in this appeal.

Before L.B. 180, there was no provision in the law for
bridge orders. This is the first time we have addressed a bridge
order under the newly enacted statute. A bridge order is part
of the juvenile code governing the juvenile court, but was
designed as a "bridge" between juvenile courts and district
courts.[4] The unique nature of a bridge order raises the question
of whether it is final under § 25-1902. In a juvenile case, as
in any other appeal, before reaching the legal issues presented
for review, it is the duty of an appellate court to determine
whether it has jurisdiction over the matter before it.[5] For an
appellate court to acquire jurisdiction of an appeal, there must
be a judgment or final order entered by the court from which
the appeal is taken.[6]

To understand whether a bridge order is final, we must
understand what, precisely, it does. We must, therefore, exam-
ine the respective roles of juvenile and district courts and the
newly enacted statutory scheme.

---

[3] *Tilson v. Tilson*, 299 Neb. 64, 907 N.W.2d 31 (2018).

[4] See Neb. Rev. Stat. §§ 43-245 to 43-2,129 (Reissue 2016 & Cum. Supp.
2018).

[5] *In re Interest of Octavio B. et al.*, 290 Neb. 589, 861 N.W.2d 415 (2015).

[6] Neb. Rev. Stat. § 25-1911 (Reissue 2016).

- 233 -

Nebraska Supreme Court Advance Sheets
302 Nebraska Reports
IN RE INTEREST OF KAMILLE C. & KAMIYA C.
Cite as 302 Neb. 226

[2] Pursuant to Neb. Const. art. V, § 27, the juvenile court is a statutorily created tribunal established by the Legislature "with such . . . powers as the Legislature may provide." Each county, depending on its population, has either a separate juvenile court or a county court with authority to sit as a juvenile court.[7] As a statutorily created court of limited and special jurisdiction, a juvenile court has only such authority as has been conferred on it by statute.[8]

[3] Section 43-247 gives the juvenile court jurisdiction as to any juvenile defined in subdivision (3) of that section. The dual purpose of proceedings brought under § 43-247(3)(a), which alleges that the juvenile is homeless, destitute, or without proper support through no fault of the parent, guardian, or custodian, is to protect the welfare of the child and to safeguard the parent's right to properly raise his or her own child.[9] During proceedings under § 43-247(3)(a), the juvenile court has broad jurisdiction under Neb. Rev. Stat. § 43-284 (Reissue 2016) regarding placement, but its discretion is governed by the parental preference doctrine that holds that in a child custody controversy between a biological parent and one who is neither a biological nor adoptive parent, the biological parent has a superior right to the custody of the child.[10] The juvenile court's authority and duty thus includes "to make reasonable efforts to preserve and reunify the family if required under section 43-283.01,"[11] as well as "[t]o promote adoption, guardianship, or other permanent arrangements

---

[7] See § 43-2,111 and Neb. Rev. Stat. § 24-517(10) (Reissue 2016).

[8] *In re Interest of Jaden H.*, 263 Neb. 129, 638 N.W.2d 867 (2002).

[9] *In re Interest of Constance G.*, 247 Neb. 629, 529 N.W.2d 534 (1995).

[10] See, *In re Interest of Amber G. et. al.*, 250 Neb. 973, 554 N.W.2d 142 (1996), *disapproved on other grounds, In re Interest of Lilly S. & Vincent S.*, 298 Neb. 306, 903 N.W.2d 651 (2017); *In re Interest of Stephanie H. et al.*, 10 Neb. App. 908, 639 N.W.2d 668 (2002).

[11] Neb. Rev. Stat. § 43-246(5) (Reissue 2016).

- 234 -

Nebraska Supreme Court Advance Sheets
302 Nebraska Reports
IN RE INTEREST OF KAMILLE C. & KAMIYA C.
Cite as 302 Neb. 226

for children in the custody of [DHHS] who are unable to return home."[12]

The district court traditionally determines custody matters as between unmarried parents when juvenile services are not required.[13] In such cases, the parental preference doctrine is not implicated, because there is no controversy between a biological parent and one who is neither a biological nor adoptive parent.

Neb. Rev. Stat. § 43-245(12) (Reissue 2016) provides in part: "Nothing in the Nebraska Juvenile Code shall be construed to deprive the district courts of their habeas corpus, common-law, or chancery jurisdiction or the county courts and district courts of jurisdiction of domestic relations matters as defined in section 25-2740." Neb. Rev. Stat. § 25-2740(1)(a) (Reissue 2016) includes "custody" within the definition of the term "[d]omestic relations matters." Thus, up until amendments passed by the Legislature in 2008, domestic relations custody determinations between two parents were not within the scope of the juvenile court's jurisdiction under § 43-247(3)(a). They were matters exclusively under the jurisdiction of the district court.

At the same time, district courts were discouraged from making custody or visitation determinations while a juvenile court was exercising its jurisdiction over a child.[14] For example, in *Ponseigo v. Mary W.*,[15] we affirmed the district court's refusal to consider a petition for grandparent visitation while a case involving the juvenile's adjudication under § 43-247(3) continued in juvenile court. We noted the relative specificity of the relevant statutes as well as the need to avoid the possibility of conflicting orders from different courts.[16]

---

[12] § 43-246(6).

[13] See *In re Interest of Ethan M.*, 18 Neb. App. 63, 774 N.W.2d 766 (2009).

[14] Compare *Ponseigo v. Mary W.*, 267 Neb. 72, 672 N.W.2d 36 (2003), with *Schleuter v. McCuiston*, 203 Neb. 101, 277 N.W.2d 667 (1979).

[15] *Ponseigo v. Mary W., supra* note 14.

[16] See *id.*

- 235 -

Nebraska Supreme Court Advance Sheets
302 Nebraska Reports
IN RE INTEREST OF KAMILLE C. & KAMIYA C.
Cite as 302 Neb. 226

As explained by the Nebraska Court of Appeals in *In re Interest of Ethan M.*,[17] through amendments to § 25-2740(3) in 2008, the Legislature expanded the juvenile court's subject matter jurisdiction so that it could enter domestic relations custody orders for children over whom the juvenile court already had jurisdiction for another purpose. Section 25-2740(3) refers to subsection (2), which describes domestic relations matters that shall be filed with the district court, and states that "a county court or separate juvenile court which already has jurisdiction over the child whose paternity or custody is to be determined has jurisdiction over such paternity or custody determination." Before the 2008 amendments, this language referred only to paternity determinations. The express intent of the amendments was to remedy the problem that arose because the juvenile court lacked jurisdiction over domestic relations custody determinations and the district court would not make domestic relations custody determinations over a child while under the juvenile court's jurisdiction.[18]

However, the procedures for making domestic relations custody determinations were not changed by the 2008 amendments and needed to be followed by the juvenile court in order to make a custody determination as between two parents.[19] These procedures differ depending upon whether there is a prior custody decree, but include the filing of a petition or a complaint[20] and the development of a parenting plan as provided in the Parenting Act.[21]

[4] In *In re Interest of Ethan M.*, the Court of Appeals noted that when the juvenile court does not enter a final custody order under the appropriate procedures for domestic relations

---

[17] *In re Interest of Ethan M., supra* note 13.

[18] See *id.* See, also, *Ponseigo v. Mary W., supra* note 14.

[19] See *In re Interest of Ethan M., supra* note 13.

[20] See § 25-2740(2).

[21] See Neb. Rev. Stat. § 42-364 (Reissue 2016).

matters, but merely enters a dispositional order placing the child with the noncustodial parent, such order can no longer be enforced once the court terminates its jurisdiction over the juvenile case.[22] Under § 43-247(12), the juvenile court retains jurisdiction as to any individual adjudicated under various subsections, including subsection (3)(a), only "until the individual reaches the age of majority or the court otherwise discharges the individual from its jurisdiction." Thus, the juvenile court loses jurisdiction to order compliance with dispositional plans once it has terminated jurisdiction over the juvenile and the parties.[23]

One of the reasons the juvenile court may terminate its jurisdiction over a juvenile is that the child is no longer in need of protection.[24] And § 43-246.02(1)(d) indicates that a bridge order is appropriate only when the juvenile case can safely be closed. Section 43-246.02(1)(d) states that one of the necessary criteria for a bridge order is that the juvenile court has determined "its jurisdiction under subdivision (3)(a) of section 43-247 should properly end once orders for custody, physical care, and visitation are entered by the district court." Section 43-246.02(3)(a) provides that any motion for a bridge order shall allege that "the juvenile court action filed under subdivision (3)(a) of section 43-247 may safely be closed once orders for custody, physical care, and visitation have been entered by the district court." The Introducer's Statement of Intent was to authorize the creation of "'Bridge Orders' to transfer a case from juvenile court to district court when a noncustodial parent has been deemed fit to safely care for a child, and close the unnecessary juvenile case."[25]

---

[22] See *id.*

[23] See *In re Interest of Lisa V.*, 3 Neb. App. 559, 529 N.W.2d 805 (1995).

[24] *In Interest of Amanda H.*, 4 Neb. App. 293, 542 N.W.2d 79 (1996).

[25] Introducer's Statement of Intent, L.B. 180, Judiciary Committee, 105th Leg., 1st Sess. (Jan. 26, 2017).

- 237 -

Nebraska Supreme Court Advance Sheets
302 Nebraska Reports
IN RE INTEREST OF KAMILLE C. & KAMIYA C.
Cite as 302 Neb. 226

A bridge order "shall only address matters of legal and physical custody and parenting time,"[26] but it is not a domestic relations custody decree. As such, the procedural requirements leading up to the bridge order of custody are significantly less onerous than for a domestic relations custody decree under § 25-2740(3). The Legislature noted in enacting L.B. 180 that juvenile courts do not always have the time on their dockets to determine domestic relations custody matters.[27] Accordingly, § 43-246.02(4) specifically states that "[t]he Parenting Act shall not apply to the entry of the bridge order in juvenile or district court" and that "[n]o mediation or specialized alternative dispute resolution under section 42-364 shall be required . . . ."

[5] In enacting § 43-246.02, authorizing bridge orders, the Legislature crafted a solution for temporary continuity when the child is no longer in need of the juvenile court's protection; the juvenile court has made, through a dispositional order, a custody determination in the child's best interests; and the juvenile court does not wish to enter a domestic relations custody decree under the power granted by § 25-2740(3). Such custody decree is instead entered by the district court after the transfer of jurisdiction over the child from juvenile court to district court, which transfer is inherent to the bridge order. Section 43-246.02(1) states that "[a] juvenile court may terminate its jurisdiction under subdivision (3)(a) of section 43-247 by transferring jurisdiction over the juvenile's custody, physical care, and visitation to the district court through a bridge order . . . ." Section 43-246.02(5) states that "[u]pon transferring jurisdiction from a juvenile court to a district court, the clerk of the district court shall docket the case under either a new docket or any previous docket establishing custody or paternity of a child."

---

[26] § 43-246.02(4).

[27] Judiciary Committee Hearing, L.B. 180, 105th Leg., 1st Sess. 79 (Jan. 26, 2017).

Upon transfer, the district court shall "give full force and effect to the juvenile court bridge order as to custody and parenting time."[28] However, either party may "file a petition in district court for modification of the bridge order" and, if filed within 1 year after the filing date of the bridge order, "the party requesting modification shall not be required to demonstrate a substantial change of circumstance but instead shall demonstrate that such modification is in the best interests of the child."[29] In such modification proceedings, the statutory scheme requires no deference to the juvenile court's judgment of the child's best interests. Further, § 43-246.02(6) now provides that "[t]he transfer of jurisdiction shall not result in new filing fees and other court costs being assessed against the parties."[30] In other words, the custody determination made by the juvenile court has no legally preclusive effect and will be made anew by the district court if either parent is discontent with the custody arrangement originally set forth by the bridge order. And § 43-246.02(6) ensures that there will be no new filing costs when seeking what in effect is a de novo review of the best interests of the child.

[6,7] To summarize the statutory scheme, a bridge order is a tool for juvenile courts to temporarily ensure continuity for the child without endeavoring to issue a final custody decree. A juvenile court can ensure through a bridge order that during the transfer of jurisdiction to the district court for entry of a custody decree, the custody arrangement that the juvenile court has found to be in the child's best interests remains in place. The Legislature, through enacting § 43-246.02, bridged the gap that would otherwise occur between the time that the juvenile court terminated its jurisdiction and the district court picked up the case, by avoiding a reversion, before district court

---

[28] § 43-246.02(6) (now found at § 43-246.02(7) (Cum. Supp. 2018)).

[29] § 43-246.02(8) (now found at § 43-246.02(9) (Cum. Supp. 2018)).

[30] See 2018 Neb. Laws, L.B. 708, § 1 (eff. July 19, 2018).

- 239 -

Nebraska Supreme Court Advance Sheets
302 Nebraska Reports
IN RE INTEREST OF KAMILLE C. & KAMIYA C.
Cite as 302 Neb. 226

proceedings can be commenced, back to whatever custody arrangement controlled before adjudication.

[8-10] The unique nature of the bridge order does not place it squarely within our final order jurisprudence. Juvenile court proceedings are special proceedings, and an order in a juvenile special proceeding is final and appealable if it affects a parent's substantial right to raise his or her child.[31] A substantial right is an essential legal right, not a mere technical right.[32] It is not enough that the right itself be substantial; the effect of the order on that right must also be substantial.[33]

[11,12] "Most fundamentally, an order affects a substantial right when the right would be significantly undermined or irrevocably lost by postponing appellate review."[34] If the right affected would not be significantly undermined by delaying appellate review, then the order falls under the general prohibition of immediate appeals from interlocutory orders. This general prohibition operates to avoid piecemeal appeals arising out of the same set of operative facts, chaos in trial procedure, and a succession of appeals in the same case to secure advisory opinion to govern further actions of the trial court.[35]

As stated, a bridge order is an order transferring jurisdiction over the child from the juvenile court to the district court. We held in *In re Interest of Sandrino T.*[36] that the transfer from juvenile court to county court of juvenile cases brought under Neb. Rev. Stat. § 43-246.01 (Reissue 2016) was not a final order. We held that the court in which the case would proceed

---

[31] *Id.*

[32] *In re Estate of Abbott-Ochsner*, 299 Neb. 596, 910 N.W.2d 504 (2018).

[33] *Id.*

[34] *Tilson v. Tilson, supra* note 3, 299 Neb. at 71, 907 N.W.2d at 37.

[35] See *In re Adoption of Madysen S. et al.*, 293 Neb. 646, 879 N.W.2d 34 (2016).

[36] Compare, e.g., *In re Interest of Sandrino T.*, 295 Neb. 270, 888 N.W.2d 371 (2016), with *In re Interest of L.P. and R.P.*, 240 Neb. 112, 480 N.W.2d 421 (1992).

- 240 -

Nebraska Supreme Court Advance Sheets
302 Nebraska Reports
IN RE INTEREST OF KAMILLE C. & KAMIYA C.
Cite as 302 Neb. 226

for the delinquency proceedings was a mere technical right and not a substantial right and that the right affected by the transfer order could be effectively vindicated in an appeal at the conclusion of the criminal proceedings.[37]

[13] A bridge order does more than simply transfer the case to district court. It orders a change in custody as between two parents. Still, such order is merely temporary until given "full force and effect"[38] by the district court, and it has no legally preclusive effect in the event that either parent wishes to challenge it in district court. Custody is generally considered an essential legal right implicating a parent's fundamental, constitutional right to raise his or her child, but the duration of a court's order is also relevant to whether an order affects a substantial right.[39]

We have held that certain orders affecting custody or other parental rights had a substantial effect on those rights and were, therefore, final, despite being of limited duration. Such cases generally involve either (1) a change in permanency plan or (2) orders of substantial or uncertain duration.[40] Further, such cases involve the State's taking significant parenting contact or parental prerogatives away from a parent and, thus, implicate the parental preference doctrine.[41] In contrast, in

---

[37] *In re Interest of Sandrino T., supra* note 36.

[38] § 43-246.02(6) (now found at § 43-246.02(7) (Cum. Supp. 2018)).

[39] See *In re Interest of Karlie D.*, 283 Neb. 581, 811 N.W.2d 214 (2012).

[40] See, *In re Interest of LeVanta S.*, 295 Neb. 151, 887 N.W.2d 502 (2016); *In re Interest of Octavio B. et al., supra* note 5; *In re Interest of Mya C. & Sunday C.*, 286 Neb. 1008, 840 N.W.2d 493 (2013). See, also, *In re Interest of Karlie D., supra* note 39.

[41] Compare *In re Interest of Becka P. et al.*, 296 Neb. 365, 894 N.W.2d 247 (2017), and *In Interest of Loomis*, 195 Neb. 552, 239 N.W.2d 266 (1976), with *In re Interest of Danaisha W. et al.*, 287 Neb. 27, 840 N.W.2d 533 (2013), *In re Interest of Borius H. et al.*, 251 Neb. 397, 558 N.W.2d 31 (1997), and *In re Interest of Stephanie H. et al., supra* note 10. But see *In re Interest of Jaydon W. & Ethan W.*, 25 Neb. App. 562, 909 N.W.2d 385 (2018).

several other juvenile court cases, we have found that orders temporarily affecting a parent's custodial, visitation, or educational rights were not final. This has generally been when it was clear that the orders will be for a very limited duration.[42] Despite the importance of the rights affected, we held that such orders of limited duration failed to have a substantial effect on those rights.[43]

The temporary custody orders that we have held to be final are distinguishable from bridge orders inasmuch as bridge orders do not change the requirements for reunification and they are not orders determining a child custody controversy between a biological parent and one who is neither a biological nor adoptive parent. The constitutional right at issue in a domestic relations custody decree is usually the right of visitation.[44] And, when the custody-related rights have been affected by orders entered in the context of domestic relations between two parents, such orders have been held not to be final, and thus not immediately appealable, when the court has yet to decide pending matters such as child support.[45] Even an order depriving a parent of all visitation in an underlying custody dispute between two parents has been held not to be final, when the order was temporary.[46] We have implicitly determined that the parent's rights affected by the order can be effectively vindicated even when the parent must wait to appeal until all pending matters are resolved.

---

[42] See, *In re Interest of Danaisha W. et al., supra* note 41; *In re Interest of R.R.*, 239 Neb. 250, 475 N.W.2d 518 (1991); *Gerber v. Gerber*, 218 Neb. 228, 353 N.W.2d 4 (1984); *In re Interest of Angeleah M. & Ava M.*, 23 Neb. App. 324, 871 N.W.2d 49 (2015), *disapproved on other grounds, In re Estate of Abbott-Ochsner, supra* note 32; *In re Interest of Nathaniel P.*, 22 Neb. App. 46, 846 N.W.2d 681 (2014).

[43] *Tilson v. Tilson, supra* note 3.

[44] See *Koch v. Koch*, 219 Neb. 195, 361 N.W.2d 548 (1985).

[45] See *Schepers v. Schepers*, 236 Neb. 406, 461 N.W.2d 413 (1990).

[46] See *Steven S. v. Mary S.*, 277 Neb. 124, 760 N.W.2d 28 (2009). See, also, *Tilson v. Tilson, supra* note 3.

- 242 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
302 NEBRASKA REPORTS
IN RE INTEREST OF KAMILLE C. & KAMIYA C.
Cite as 302 Neb. 226

Furthermore, in a somewhat different domestic relations context of a custody order during military deployment,[47] we held, in *Huskey v. Huskey*,[48] that an order changing sole legal and physical custody from the mother to the father while the mother was deployed for 8 months was not a final order because it was temporary. The temporary custody order during deployment that was addressed in *Huskey* is similar to a bridge order insofar as it automatically continues to be in effect until one of the parties files a motion. Section 43-2929.01(5) provided that upon the return of the military parent from mobilization or deployment, either parent may request a rehearing or reinstatement of a prior order. If the temporary order was the initial order, the court is required to rehear the matter and make a new determination. And if the temporary order was a modification, the court is required to reinstate the original order unless the best interests of the child or child support guidelines require otherwise. It thus contemplates further action without issue preclusion as to the best interests determination made in relation to the temporary order. Such an order is considered temporary and without a substantial effect on important custody rights.[49]

[14,15] A bridge order is designed to preserve the status quo by continuing the placement with the noncustodial parent until the matter can be heard in district court, if either of the parties are dissatisfied with the custody decree that the district court enters in accordance with the bridge order. The initial placement with Samuel occurred during a dispositional order, which would have been final under § 25-1902,[50] and

[47] Neb. Rev. Stat. § 43-2929.01(4)(a) (Cum. Supp. 2012) (see, currently, Neb. Rev. Stat. § 43-4601 et seq. (Reissue 2016)).

[48] *Huskey v. Huskey*, 289 Neb. 439, 855 N.W.2d 377 (2014). See, also, *Carmicheal v. Rollins*, 280 Neb. 59, 783 N.W.2d 763 (2010).

[49] See *id.*

[50] See *In re Interest of Karlie D., supra* note 39. See, also, *In re Interest of Tayla R.*, 17 Neb. App. 595, 767 N.W.2d 127 (2009).

- 243 -

Nebraska Supreme Court Advance Sheets
302 Nebraska Reports
IN RE INTEREST OF KAMILLE C. & KAMIYA C.
Cite as 302 Neb. 226

Nateesha did not appeal that dispositional order. We have said in similar contexts that an order merely preserving the status quo pending a further order is not final.[51]

Granted, placement while working toward reunification is not the same as a domestic relations custody order. Nevertheless, because Nateesha can immediately move for a de novo reevaluation in district court of whether the custody decree is in Kamille and Kamiya's best interests—without a showing of a change of circumstances or incurring additional filing fees or costs—we ultimately conclude that any rights affected by the bridge order would not be significantly undermined or irrevocably lost if not immediately appealable to our appellate courts.

We recognize that some things will change due to the transfer. If Nateesha moves to modify the custody decree that gives full force and effect to the bridge order, she will have to demonstrate that the child's best interests are served by a different arrangement and she will no longer have the right to appointment of counsel. Still, parties generally do not have a right to counsel in domestic relations matters and the provision for modification in district court without demonstrating a change of circumstances operates as a form of review that can be accessed more quickly and with less cost than a direct appeal.

Even if we were to review the bridge order, such review would serve no purpose other than to extend its duration. Any determination upon direct review of the juvenile court's bridge order would have little meaning, because under the statutory scheme, the best interests determination could be made anew by the district court regardless.

[16,17] Immediate appellate review of a bridge order would undermine the rights affected more than it would vindicate them. The goal of quickly resolving domestic relations

---

[51] See *Tilson v. Tilson, supra* note 3.

- 244 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
302 NEBRASKA REPORTS
IN RE INTEREST OF KAMILLE C. & KAMIYA C.
Cite as 302 Neb. 226

custody disputes would be hindered, not assisted, by permitting interlocutory appeals of bridge orders.[52] For this reason, we hold that a bridge order is not final for purposes of § 25-1902.

## CONCLUSION

Because we lack appellate jurisdiction, the appeal is dismissed.

APPEAL DISMISSED.

HEAVICAN, C.J., participating on briefs.

---

[52] See *Steven S. v. Mary S., supra* note 46.