COMMERCIAL SAVINGS & LOAN ASSOCIATION, A CORPORATION, APPELLEE, v. HOLLY DEVELOPMENT, INC., ET AL., APPELLEES, IMPLEADED WITH MERRILL GOFF ET AL., APPELLANTS.

154 N. W. 2d 510

Filed December 1, 1967. No. 36670.

Haney, Walsh & Wallentine, for appellants.

Fitzgerald, Brown, McGill & Strom and William J. Brennan, Jr., for appellee Commercial Sav. & Loan Assn.

Ross & O'Connor, for appellees Holly Development, Inc., et al.

Gaines, Spittler, Neely, Otis & Moore, for appellee Allen.

McCormack, McCormack & Brown and Patrick L. Cooney, for appellees Epsen et al.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, McCOWN, and NEWTON, JJ.

CARTER, J.

This is an appeal from an order of the district court for Douglas County refusing to set aside a default judgment to permit certain defendants to file an answer and defend on the merits.

The action was begun by Commercial Savings and Loan Association to foreclose a mortgage on a residence property described as 4941 Browne Street. Merrill Goff and Dorothy P. Goff were made parties defendant to the action. They were husband and wife. A summons was served personally on Merrill Goff and on Dorothy P. Goff by leaving a certified copy at her usual place of residence. On February 7, 1967, a decree of foreclosure was entered, the default of the Goffs being noted in the decree. On March 28, 1967, the defendants Goff filed an application to set aside the default judgment taken against them, attaching thereto the answer they proposed to file if the decree was set aside.

The evidence shows that the Goffs purchased the residence at 4941 Browne Street on May 8, 1959, from Holly Development, Inc., of which Ernest J. Banse and

Joanne M. Banse were the president and secretary, respectively. Joanne M. Banse was the daughter of Dorothy P. Goff and Ernest J. Banse was the husband of Joanne M. Banse and the son-in-law of Dorothy P. Goff. Banse delivered the deed from Holly Development, Inc., to the Goffs and at the same time requested the Goffs to sign numerous documents allegedly connected with the transaction. The Goffs, trusting Banse, signed the documents. Without their knowledge, they signed a deed, bearing the same date as the Holly Development, Inc., deed, conveying the residence to Banse and his wife in joint tenancy. The notary who acknowledged the deed signed by the Goffs testified that she knew the relationship of the Goffs to Banse but had never met them. At the instance of Banse, her employer, she placed her signature and notarial seal on the acknowledgment of the deed outside of their presence.

The evidence shows that Banse was to make the payments to Commercial Savings and Loan Association on its first mortgage lien. The Goffs paid Banse $150 per month, monthly checks in such amount for the period May 1961 to June 1966 are shown by the record. The Goffs moved into the property in May 1959 and remained until July 1, 1966, after which they resided at 5021 North Fiftieth Street. On December 15, 1965, the Banses sold the house and delivered a deed to Edward J. Epsen and Michael McCormack for a consideration of $6,000.

On September 29, 1966, the Commercial Savings and Loan Association filed its petition to foreclose its first mortgage lien and on the same day a summons was issued. On October 4, 1966, Dorothy P. Goff was served with summons by leaving a certified copy at her usual place of residence. On November 21, 1966, an alias summons was served personally on Merrill Goff. Mrs. Goff testified that she did not receive the copy of the summons left at her usual place of residence and infers with considerable reason that the summons was taken and retained by Banse who was at that time residing with

the Goffs. On November 21, 1966, or the day following, Merrill Goff discussed his summons with Mrs. Goff and, being concerned, they questioned Banse about the matter. Banse informed them that it was a mistake and he would have August Ross, an attorney, look after their interests. He purported to telephone Ross in their presence. This call proved to be a false one, Ross testifying that he did not talk with Banse by telephone and that he was never requested by anyone to represent the Goffs. It is plain, however, that both of the Goffs knew of the pendency of the action on November 22, 1966, long before the default decree was taken against them. Banse subsequently departed Omaha without leaving a forwarding address. The record bears out the conclusion that Banse was not a man of integrity and was completely untrustworthy. The Goffs understood this, which is borne out by the fact that Mrs. Goff consulted a lawyer about it in August 1966. The Goffs moved out of the house at 4941 Browne Street on July 1, 1966, and into a residence at 5021 North Fiftieth Street. Mrs. Goff testified that Banse had agreed to sell the house at 4941 Browne Street and use the proceeds to reduce the cost of the house at 5021 North Fiftieth Street. The evidence further shows that on August 2, 1966, Michael McCormack and Thomas Ryder of the county attorney's office called on Mrs. Goff, showed her the deed from the Goffs to the Banses dated May 8, 1959, and asked her if the signatures were those of herself and her husband. She said: "'They are ours.'" She raised no question as to the validity of the deed and by her silence lulled McCormack into a sense of security.

The evidence reflects that the Goffs knew that Banse was untrustworthy long before the default decree was taken. Mrs. Goff knew that the legal title to the 4941 Browne Street property was in the name of the Banses in August 1966, according to her own admission. When questioned about the signatures of herself and husband, she admitted the validity of the signatures and raised no

question of fraud or deceit. She admitted that Banse was to sell the house and apply the proceeds on the home subsequently purchased, and the Goffs moved from the house without asserting any claim of ownership in them. It is true they were the victims of a misplaced trust in their son-in-law, Banse, but on discovery of his unwarranted conduct, they did nothing until the house was advertised for sale by decree of the court. Their extreme negligence forecloses any right to have the decree set aside. There is no evidence whatever that other parties to the suit in any way contributed to the difficulties of the Goffs. The purchasers from Banse paid $6,000 for the house in good faith without objection by the Goffs although opportunity to object was afforded. The failure of the Goffs to answer and assert any rights they may have had was the result of their own negligence and theirs alone.

The vacation of a default judgment rests in the discretion of the district court. The burden rests on the person adversely affected by the court's order to affirmatively establish an abuse of such discretion. In the early case of Orr v. Seaton, 1 Neb. 105, this court said: "Whether a default shall be opened, is a question addressed to the discretion of the court. The Supreme Court will not interfere with its exercise, unless it is oppressive."

"A court of equity will not grant relief against a judgment taken by default where the applicant, shown to have been duly served with summons, failed to avail himself of an opportunity to defend, such failure not being the result of fraud, accident, mistake, or the like. * * * Where a judgment by default is obtained against a party by his own neglect, it constitutes no ground for equitable intervention that his adversary obtained more relief than he was entitled to." 49 C. J. S., Judgments, § 348, p. 703.

"The general rule is that one who seeks to set aside a default judgment against him must show that neither he nor his attorney was negligent in failing to appear

and defend the suit. * * * 'A defendant ordinarily can not procure the setting aside of a judgment against him on the ground of his mistaken belief that he had retained an attorney to protect his interests; he must see to it that the attorney understands and accepts the retainer; otherwise, his failure to pay personal attention to the case is inexcusable negligence.' " Dempsey v. Gibson (Tex. Civ. App.), 100 S. W. 2d 430.

In Bigler v. Baker, 40 Neb. 325, 58 N. W. 1026, 24 L. R. A. 255, this court said: "But the vacation during the same term, of judgments by default, is so largely a matter of discretion for the trial court that this court will decline to interfere unless there appears to have been a clear abuse of discretion." See, also, Barney v. Platte Valley Public Power & Irr. Dist., 147 Neb. 375, 23 N. W. 2d 335.

In a case resembling the one at bar, it appears that Mary and Isaac G. S. Cleland borrowed $6,500 from the Hamilton Loan & Trust Company and gave two real estate mortgages as security for the loan. Later the loan company brought a suit to foreclose one of the mortgages and caused a summons to be personally served on Mrs. Cleland. She did not appear and default was entered against her. The land was sold at judicial sale and the sale confirmed. A writ of possession issued and Mrs. Cleland commenced action to set aside the default, alleging she never signed the mortgage and that she supposed the writ was issued in a suit to foreclose a mortgage given to one Deitz to which she had no defense. The court found that her signature on the mortgage was a forgery and that the notarial certificate of her acknowledgment was false. In denying relief, this court said: "It is an inflexible rule that a party seeking relief in equity from a judgment taken against him by default must exhibit a defense to the action and also show that such judgment is the result of fraud, accident, or mistake, unmixed with fault or negligence on his part. A judgment will not be set aside on the

application of a party who has, by his own laches, failed to avail himself of an opportunity to defend. This salutary rule rests on principle and authority, and its rigid enforcement is necessary for the repose of society, by preventing litigation from becoming interminable. (Duncan v. Lyon, 3 Johns. Ch. [N. Y.] 351; Center Township v. Marion County, 110 Ind. 579; Bankers Life Ins. Co. v. Robbins, 53 Neb. 44; Funk v. Kansas Mfg. Co., 53 Neb. 450; Sargeant v. Bigelow, 24 Minn. 370; Langley v. Ashe, 38 Neb. 53; Norwegian Plow Co. v. Bollman, 47 Neb. 186; Pope v. Hooper, 6 Neb. 178.) In the last mentioned case the rule is stated in the syllabus as follows: 'In an original action in equity to vacate a judgment or decree, if the ground of complaint is not the result of fraud on the part of the plaintiff, or some circumstance beyond the control of the defendant, but is occasioned by the fault, negligence, or want of ordinary diligence on the part of the defendant, he will not be permitted to deny the correctness of the judgment or decree, or renew the controversy.'" Cleland v. Hamilton Loan & Trust Co., 55 Neb. 13, 75 N. W. 239.

The evidence shows that the Goffs were served with summonses in accordance with statute and that each had actual knowledge of the pendency of the suit against them on November 22, 1966, prior to the taking of the default judgment against them on February 7, 1967. Their failure to appear and assert any defense they may have had was due to their own negligence and indifference, and affords reason enough for the refusal of the trial court to deny the application of the Goffs to vacate the default decree. Service of summons cannot be ignored with impunity. A party seeking relief from a judgment taken against him by default must not only exhibit a defense to the action, but he must also show that the rendition of the judgment was not due to his failure to take proper steps for his own protection as a reasonable foresight of consequences would naturally suggest. A default judgment will not ordinarily be set

aside on the application of a party who, by his own fault, negligence, or want of diligence, has failed to protect his own interests. Such a party will not be permitted to ignore the process of the court and thereby impede the termination of litigation.

The denial of the application to vacate the default decree by the trial court was not an abuse of discretion under the facts shown and the judgment of the court pursuant thereto was correct.

AFFIRMED.

SMITH, J., participating on briefs.