IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE ON BEHALF OF JAMIRAH W. & KEITH W. V. JARVEL W.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE ON BEHALF OF JAMIRAH W. AND KEITH W., MINOR CHILDREN, APPELLEE,

V.

JARVEL W., APPELLANT.

Filed June 18, 2019.    No. A-18-623.

Appeal from the District Court for Lancaster County: LORI A. MARET, Judge. Affirmed.

Matt Catlett, of Law Office of Matt Catlett, for appellant.

Patrick F. Condon, Lancaster County Attorney, and Anna Marx for appellee.

MOORE, Chief Judge, and RIEDMANN and BISHOP, Judges.

MOORE, Chief Judge.

## I. INTRODUCTION

The State of Nebraska, on behalf of Jamirah W. and Keith W., sought to establish the paternity and child support obligation of Jarvel W. The district court for Lancaster County followed the recommendations contained in the referee's report and established Jarvel's child support obligation. Jarvel appeals, and we affirm for the reasons set forth below.

## II. BACKGROUND

Jarvel married Niketa W. in March 2013. During the marriage, Niketa gave birth to two children, Jamirah and Keith. Jarvel and Niketa separated in September 2016.

On March 17, 2017, the State filed a complaint against Jarvel to establish paternity and award child support. After several unsuccessful service attempts, Jarvel was personally served by the Lancaster County sheriff. The summons for that service stated that summons and complaint were to be personally served at "Lancaster County Court, #24" on "August 21, 2017 @ 1:30pm."

- 1 -

The service return provided that Jarvel was served at "1330 #24" in "Lincoln, NE" on "8/21/2017, 1352." On September 8, the State filed a notice of hearing, which indicated that a hearing was scheduled for October 18 before a referee. The notice included the time and location of the hearing. The certificate of service attached to the notice showed that it was mailed to Jarvel at a Lincoln address in apartment number "4."

Jarvel appeared at the October 18, 2017, hearing. He did not have evidence of his contributions to Jamirah and Keith's care with him, so he requested a continuance. The State did not object. The referee and Jarvel then had the following colloquy:

> THE REFEREE: All right, [Jarvel], given there's no objection, I'm going to grant your request for a continuance. However, I want to make it clear that, when we come back, you'll be expected to be prepared.
>
> [JARVEL]: Yes, ma'am.
>
> THE REFEREE: So it's going to be very important, when we return, that you have all documentation that you need to prove whatever elements regarding income, regarding the other child support, all of that stuff. You've got to bring that with you the next time, because an additional continuance will not be granted absent pretty extraordinary circumstances.
>
> [JARVEL]: Yes, ma'am.
>
> THE REFEREE: So, looking ahead, we have time November 15th at 8:30. Will that work?
>
> [JARVEL]: Yes, ma'am.
>
> THE REFEREE: So I'll continue today's hearing to November 15th at 8:30. [The bailiff] will jot that down for you.

On October 20, 2017, the State filed a notice of hearing for the November 15 hearing, which set forth the time (8:30 a.m.) and location of the hearing. The attached certificate of service showed that it was mailed to Jarvel at the same address where the notice of hearing for the October 18 hearing was mailed.

Jarvel did not appear at the November 15, 2017, hearing. The referee asked the State's attorney whether the notice of hearing was returned in the mail, and the State's attorney replied that it was not.

Niketa testified at the hearing that Jamirah and Keith were living with her and that there was no possibility that they had a father other than Jarvel. Since April 1, 2017, Jarvel had given Niketa only $30 for the support of the children. According to Niketa, Jarvel had threatened to quit his job so that he would not have to pay child support. Later, Jarvel did in fact quit his job. Niketa testified that the address where the State sent the notice of this hearing was Jarvel's address. Further, she had personally spoken with Jarvel about the date and time of this hearing.

The referee received into evidence the State's child support calculation worksheet, which calculated Jarvel's child support obligation based on Niketa's current income information and a verification form from Jarvel's former employer, also received in evidence, showing his income from that employer. The worksheet calculated Jarvel's child support obligation at $694 per month for two children and $469 per month for one child. The State requested retroactive support for each month since it initiated this action, less the $30 Jarvel gave Niketa, which totaled $5,522.

At 11:57 a.m. on November 15, 2017, after the referee's hearing, Jarvel filed a change of address/name form in which he provided the court with his new address. At 5:20 p.m. the same day, the referee filed her report. Citing Neb. Rev. Stat. § 43-1412(2) (Reissue 2016), the referee found Jarvel to be Jamirah and Keith's father because he was properly served and failed to answer or otherwise appear. The referee recommended that Jarvel pay $694 per month for two children and $469 per month for one child. The referee also recommended that Jarvel pay for all court fees as well as $5,522 in retroactive support. The report stated that it was "cc'd" to Jarvel at the same address to which the two notices of hearings were sent. On December 7, 2017, the district court entered an order of support, which directed Jarvel to pay the future and retroactive child support that the referee recommended as well as court fees. Notice of the judgment was shown to Jarvel at the address noted in his change of address form.

Jarvel filed a motion for a new trial on December 18, 2017. In the motion, he argued that under Neb. Rev. Stat. § 25-1142(1) (Reissue 2016), irregularities in the trial proceedings warranted the grant of a new trial. Specifically, he stated that he was entitled to a new trial because child support was also at issue in a separate dissolution of marriage proceeding that Niketa had initiated against him. He also alleged that although he had given the court in the dissolution of marriage proceeding his correct address on October 26, 2017, he never received a copy of the referee's report in the State's paternity and child support action. Jarvel also argued that he was entitled to a new trial under § 25-1142(6) because the decision was not sustained by sufficient evidence. On the same day, he filed a motion to vacate or alter or amend the judgment under Neb. Rev. Stat. §§ 25-2001 and 25-1329 (Reissue 2016), which motion cited the same arguments as his motion for a new trial. Jarvel also filed a motion to consolidate the State's paternity and child support action with the dissolution of marriage action.

On January 16, 2018, the district court held a hearing on Jarvel's motions. In addition to the arguments in his motions, Jarvel argued that Niketa was a necessary party to the State's action to establish paternity and child support, and thus the court did not have subject matter jurisdiction of the State's action. The court received Jarvel's affidavit and a bill of exceptions from the referee's October 18, 2017, hearing.

In Jarvel's affidavit, he stated that he is the biological father of Jamirah and Keith. According to Jarvel, he had possession of Jamirah from mid-February 2017 until September 2017. Jarvel had "no recollection" of receiving service in the State's action. He remembered attending a hearing in October 2017 where he spoke with the State's attorney. He also remembered that the hearing was continued to November. He did not, however, remember the date of the October hearing or what happened at it. He never received a notice of the date or time of the November 2017 hearing in the mail. He alleged that he never lived in apartment number "4" at the address to which the State sent notices. Instead, he lived at that address in apartment number "F4," but only until July 2017. Between August 2017 and December 2017, he lived at the address he provided the court in his change of address form.

The court overruled Jarvel's motion to consolidate at the conclusion of the hearing. The court took the other motions under advisement, allowing the parties to brief their arguments.

On May 29, 2018, the State filed a motion to suspend child support because a temporary child support order was entered in the dissolution of marriage action on February 15. The district

court granted the State's motion, suspending Jarvel's child support obligation under the December 7, 2017, order effective February 15, 2018.

On June 13, 2018, the district court entered an order denying Jarvel's motions for a new trial and to vacate or alter or amend the judgment. The court found that Jarvel had not met his burden to prove that he had not been served. Even if he were not served, the court found he had actual notice of the action as well as the continued November 15 hearing because he attended the October 18, 2017, hearing. The court noted that Jarvel could have provided his new address at the October 18 hearing, but he failed to do so. The court also noted that Jarvel's marriage to Niketa did not obviate his obligation to support his children, so the dissolution of marriage proceedings did not affect the child support obligation ordered in the State's action. The court also stated that Niketa was not a necessary party to the State's action to establish paternity and child support.

Jarvel appeals.

## III. ASSIGNMENTS OF ERROR

Jarvel assigns, restated and reordered, that the district court erred in (1) entering an order despite lacking subject matter jurisdiction of the State's complaint to establish paternity and child support, (2) denying his motion for a new trial and his motion to vacate or alter or amend the judgment, and (3) depriving him of procedural due process.

## IV. STANDARD OF REVIEW

When a jurisdictional question does not involve a factual dispute, its determination is a matter of law, which requires an appellate court to reach a conclusion independent of the decision made by the lower court. *In re Interest of Kamille C. & Kamiya C.*, 302 Neb. 226, 922 N.W.2d 739 (2019).

An appellate court reviews a trial court's ruling on a motion for a new trial for an abuse of discretion. *Jacobs Engr. Group v. ConAgra Foods*, 301 Neb. 38, 917 N.W.2d 435 (2018). Similarly, an appellate court will reverse a decision on a motion to vacate or modify a judgment only if the litigant shows that the district court abused its discretion. *ACI Worldwide Corp. v. Baldwin Hackett & Meeks*, 296 Neb. 818, 896 N.W.2d 156 (2017). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Farm & Garden Ctr. v. Kennedy*, 26 Neb. App. 576, 921 N.W.2d 615 (2018).

## V. ANALYSIS

### 1. SUBJECT MATTER JURISDICTION

Jarvel assigns that the district court erred in entering an order despite lacking subject matter jurisdiction. He argues the court lacked subject matter jurisdiction because the State failed to add Niketa, whom he asserts is a necessary party, to its action to establish paternity and child support. We disagree. The code of civil procedure provides that if a determination of the controversy cannot be had without the presence of the parties, the court must order them to be brought into the litigation. *Pan v. IOC Realty Specialist* 301 Neb. 256, 918 N.W.2d 273 (2018). Neb. Rev. Stat. § 25-323 (Reissue 2016) codifies the concept of compulsory joinder in Nebraska, stating in relevant part:

The court may determine any controversy between parties before it when it can be done without prejudice to the rights of others or by saving their rights; but when a determination of the controversy cannot be had without the presence of other parties, the court must order them to be brought in.

The first clause of this statute makes the inclusion of necessary parties discretionary when a controversy of interest to them is severable from their rights. *Midwest Renewable Energy v. American Engr. Testing*, 296 Neb. 73, 894 N.W.2d 221 (2017). However, the second clause mandates the district court to order indispensable parties to be brought into the controversy. *Id.*

In Nebraska, it has long been held that an indispensable party is one whose interest in the subject matter of the controversy is such that the controversy cannot be finally adjudicated without affecting the indispensable party's interest, or which is such that not to address the interest of the indispensable party would leave the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience. *Pan, supra.* Further, based on the distinction of parties in § 25-323, all persons interested in a contract or property involved in a suit are necessary parties, and all persons whose interests therein may be affected by the decree in equity are indispensable parties. *Midwest Renewable Energy, supra.* In order for a party to be indispensable or necessary, the threshold determination that must be made is whether the party has an interest in the subject matter of the controversy. *Pan, supra.* The absence of an indispensable party to a controversy deprives the court of subject matter jurisdiction to determine the controversy and cannot be waived. *Bayliss v. Clason*, 26 Neb. App. 195, 918 N.W.2d 612 (2018).

Neb. Rev. Stat. § 43-512.03(1)(a) (Reissue 2016) requires the county attorney, in enumerated circumstances, to "file a complaint against a nonsupporting party in the district, county, or separate juvenile court praying for an order for child or medical support in cases when there is no existing child or medical support order." A nonsupporting parent has a duty to support his or her child, regardless of whether he or she is married to the supporting parent. See, *State on behalf of B.M. v. Brian F.*, 288 Neb. 106, 846 N.W.2d 257 (2014); *Sylvis v. Walling*, 248 Neb. 168, 532 N.W.2d 312 (1995); *Henke v. Guerrero*, 13 Neb. App. 337, 692 N.W.2d 762 (2005). See, also, Neb. Rev. Stat. § 43-1402 (Reissue 2016). A cause of action to enforce a parental duty to provide support belongs to the child. *In re Interest of Alycia P.*, 258 Neb. 258, 603 N.W.2d 7 (1999); *State on behalf of Hopkins v. Batt*, 253 Neb. 852, 573 N.W.2d 425 (1998).

Jarvel argues that because both he and Niketa share an obligation to support their children, Niketa was a necessary party to the State's child support action. We observe, however, that because the children were in Niketa's care at the time of the November 15, 2017, hearing, she was already supporting them. Section 43-512.03(1)(a) gives the State authority to file an action against the nonsupporting parent, not the supporting parent. The cause of action for support belongs to the child, not the custodial parent. Thus, the action to establish Jarvel's paternity and child support obligation could be determined without the necessity of making Niketa a party. Further, although Niketa has a monetary interest in the action in that she stands to receive child support to assist her in supporting their child, she is not prejudiced by her absence as a party to the action.

We conclude that the district court had subject matter jurisdiction to determine Jarvel's child support obligation despite Niketa not being included as a party to the action.

## 2. MOTION FOR NEW TRIAL AND MOTION TO VACATE

Jarvel assigns that the district court erred in denying his motion for a new trial and his motion to vacate or alter or amend the judgment. As discussed below, we find the district court properly denied Jarvel's motions.

Under § 25-1142 a new trial is a reexamination in the same court of an issue of fact after a verdict by a jury, a report of a referee, or a trial and decision by the court. *Clarke v. First Nat. Bank of Omaha*, 296 Neb. 632, 895 N.W.2d 284 (2017). Section 25-1142 provides the grounds under which a court must vacate its former decision. Jarvel cited subsections (1), which provides that an "[i]rregularity in the proceedings of the court, jury, referee, or prevailing party or any order of the court or referee or abuse of discretion by which the party was prevented from having a fair trial" and (6), which provides "that the verdict, report, or decision is not sustained by sufficient evidence or is contrary to law." In addition to the power to grant a new trial, courts have the power to vacate or modify their own judgments and orders at any time during the term at which they were pronounced. *In re Interest of Luz P. et al.*, 295 Neb. 814, 891 N.W.2d 651 (2017). A motion to alter or amend under Neb. Rev. Stat. § 25-1329 is a motion that seeks substantive alteration of a judgment. See *Central Neb. Pub. Power v. Jeffrey Lake Dev.*, 267 Neb. 997, 679 N.W.2d 235 (2004). Jarvel's motion for a new trial and his motion to vacate or alter or amend the judgment cite the same arguments, and he treated the motions together in the trial court and in his appellate brief. Therefore, we address the motions together below.

### (a) Service of Process

First, Jarvel argues that although the record contains an August 22, 2017, service return showing that he was personally served with process, he nevertheless was not properly served. He asserts that the service was improper because he could not remember being served and because the service return does not record the address at which he was served. This argument is without merit.

Neb. Rev. Stat. § 25-507.01(1) (Reissue 2016) lists the items a proper service return must contain:

> Within twenty days after the date of issue, the person serving the summons . . . shall make proof of service to the court stating the time, place, including the address if applicable, name of the person with whom the summons was left, and method of service, or return the unserved summons to the court with a statement of the reason for the failure to serve.

The service return at issue here showed that a representative from the Lancaster County Sheriff's Office personally served Jarvel on "August 21, 2017, 1352" at "1330 #24 Lincoln, Nebraska." The summons reflects that it was to be personally served at "Lancaster County Court, #24" on "August 21, 2017 @ 1:30pm." While this return of service does not contain the courthouse's full address, it contains enough information to reliably show that Jarvel was properly served.

Even if Jarvel were not served at all, he waived service by appearing at the October 18, 2017 hearing and requesting a continuance. Under Neb. Rev. Stat. § 25-516.01(1) (Reissue 2016), the voluntary appearance of a party is the equivalent of service of process. Section 25-516.01(2) goes on to state that participation in the proceedings on any issue other than the defenses of lack of jurisdiction over the person, insufficiency of process, or insufficiency of services of process,

waives all such issues except as to the objection that the party is not amenable to process issued by a court of this state. *Applied Underwriters v. Oceanside Laundry*, 300 Neb. 333, 912 N.W.2d 912 (2018). Thus, a general appearance waives any defects in the process or notice, the steps preliminary to its issuance, or in the service or return thereof. *Id.* A party will be deemed to have appeared generally if, by motion or other form of application to the court, he or she seeks to bring its powers into action on any matter other than the question of jurisdiction over that party. *Burns v. Burns*, 293 Neb. 633, 879 N.W.2d 375 (2016).

Jarvel appeared at a hearing before the referee on October 18, 2017. At that hearing, Jarvel asked the referee to continue the child support proceedings so that he could collect evidence from his home. The referee asked Jarvel whether he would be able to attend a hearing on November 15 at 8:30 a.m., to which he replied "[y]es, ma'am." By appearing at the hearing and asking for a continuance, Jarvel made a general appearance in this matter and thus waived the argument that he was not properly served.

### (b) Notice of October 18, 2017, Hearing

Jarvel next argues that notwithstanding the service of process, he did not have sufficient notice of the referee's October 18, 2017, hearing. He asserts that because Neb. Ct. R. Pldg. § 6-1112 allows a defendant 30 days to answer after being served with a complaint, the court was not permitted to schedule a future hearing on the State's complaint until that 30-day deadline had passed. Neither Nebraska's civil procedure rules nor due process considerations support his argument. Jarvel was served with a summons and complaint on August 21, and the court scheduled its hearing for October 18, 58 days after he was served. The fact that the State sent Jarvel notice of this hearing on September 8, before the 30-day answer deadline, is irrelevant.

Jarvel also argues that he received insufficient notice of the referee's October 18, 2017, hearing because the State sent its notice of hearing to an incorrect address. Regardless, Jarvel appeared at the October 18 hearing, at which he was granted a continuance to allow him to collect evidence and present his case. Thus, his argument about lack of notice for the October 18 hearing is without merit.

### (c) Notice of November 15, 2017, Hearing

Jarvel argues that he was not properly notified of the November 15, 2017, hearing because the State sent the notice of hearing to an incorrect address. However, Jarvel was present on October 18 when the referee, at Jarvel's request, rescheduled the hearing for November 15, which Jarvel confirmed was acceptable to him. As a result, Jarvel was clearly notified of the date and time of the November 15 hearing. He was also advised that the referee would decide the status of his child support obligation at that hearing.

Asserting that the referee's hearing was a default hearing, Jarvel further argues that the State was required to file a motion for default judgment before the referee was permitted to file a default report.

The November 15, 2017, hearing was not set as a default hearing. Although Jarvel was technically in default as he had not filed an answer to the State's complaint, he did appear at the October 18 hearing at which time he requested a continuance in order to be able to bring evidence before the referee. Jarvel was advised, and agreed, that the hearing would be continued to

November 15. Thus, the State could reasonably anticipate that Jarvel would appear on November 15 and it would not be a default hearing. The hearing on November 15 resulted in the recommendation of a default judgment only because Jarvel failed to appear. And the entry of the default judgment by the district court was appropriate. See Neb. Rev. Stat. 43-1412(2) (Reissue 2016) ("[a] default judgment in paternity action shall be entered upon a showing of service and failure of defendant to answer or otherwise appear").

Although Jarvel was personally advised of the November 15, 2017, hearing by the referee, the State also sent a notice of hearing to the address for Jarvel previously used in the notice of hearing for the October 18 hearing, at which Jarvel appeared. The notice of hearing was mailed on October 20, well in advance of the November 15 hearing. Niketa confirmed that the address used in this notice of hearing was Jarvel's address.

Jarvel had actual notice of the November 15, 2017, hearing and its purpose, but he neglected to attend the hearing. We will not vacate the district court's child support order simply because Jarvel failed to attend a hearing that was rescheduled at his request. See *Commercial Sav. & Loan Assn. v. Holly Development, Inc.*, 182 Neb. 335, 340-41, 154 N.W.2d 510, 513 (1967) ("[a] judgment will not be set aside on the application of a party who has, by his own laches, failed to avail himself of an opportunity to defend").

### (d) Copy of Referee's Recommendation

Jarvel argues that the district court should have granted his motions for a new trial and to alter or amend the judgment because he did not receive a copy of the referee's recommendation, as required by Rules of Dist. Ct. of Third Jud. Dist. 3-11.D(2) (rev. 2014). He notes that he filed a change of address form on November 15, 2017, at 11:57 a.m. The referee filed her recommendation on November 15 at 5:20 p.m. Based on the file stamps, Jarvel asserts he alerted the court of his change of address 5 hours before the referee mailed the recommendation to an incorrect address.

Even if Jarvel failed to receive the recommendation, the record shows that this failure was on account of Jarvel's own actions or inactions. Jarvel stated in his affidavit that he lived in apartment "F4," as opposed to "4," at the address contained in the two notices of hearing until July 2017, and in a different apartment between August 2017 and December 2017 for which the court did not have an address. Jarvel appeared at the referee's October 18 hearing, but did not provide his current address at that hearing. He failed to appear for the November 15 hearing scheduled to begin at 8:30 a.m., yet he provided a change of address form a few hours later. Although the referee's report was filed a few hours after Jarvel filed the change of address form, under these circumstances, we find no abuse of discretion in the district court's denial of Jarvel's motion for new trial or to vacate or alter or amend.

As a result, this argument is without merit.

### (e) Dissolution of Marriage Action

Jarvel argues the court erred in denying his motions for a new trial or to vacate or alter or amend the judgment because a separate temporary child support order was entered against him on February 15, 2018, in Niketa's dissolution of marriage action. In a May 29 order, the district court noted the child support order in the dissolution of marriage action and suspended Jarvel's child

support obligation under the child support order in this case, effective February 15, 2018. The fact that Niketa filed a dissolution of marriage action and obtained a temporary child support order in that action does not negate Jarvel's obligation to support Jamirah and Keith before the separate order was entered. Thus, this argument is without merit.

### (f) Conclusion

None of Jarvel's arguments amount to an irregularity in the proceeding such that he would be entitled to a new trial under § 25-1142(1). Further, Jarvel is not entitled to a new trial under § 25-1142(6) because he provided no argument showing the evidence was insufficient to support the district court's December 7, 2017 child support order. For similar reasons, the district court did not abuse its discretion by denying Jarvel's motion to vacate or alter or amend the judgment.

### 3. PROCEDURAL DUE PROCESS

Jarvel assigns that the district court's failure to grant his motions for a new trial and to vacate or alter or amend the judgment denied him of constitutionally required due process. We disagree.

Due process principles protect individuals from arbitrary deprivation of life, liberty, or property without due process of law. *Prokop v. Lower Loup NRD*, 302 Neb. 10, 921 N.W.2d 375 (2019). Procedural due process claims require a two-step analysis: (1) whether the plaintiff has asserted a life, liberty, or property interest that is protected by the Due Process Clause and (2) whether the plaintiff was deprived of that interest without sufficient process. *Prokop, supra*. Here, Jarvel's child support obligation triggers due process protections. See, e.g., *State on behalf of A.E. v. Buckhalter*, 273 Neb. 443, 730 N.W.2d 340 (2007).

Due process does not guarantee an individual any particular form of state procedure. Instead, the requirements of due process are satisfied if a person has reasonable notice and an opportunity to be heard appropriate to the nature of the proceeding and the character of the rights which might be affected by it. *Cain v. Custer Cty. Bd. of Equal.*, 298 Neb. 834, 906 N.W.2d 285 (2018). As we discussed above, Jarvel had notice and an opportunity to be heard in the present case. His failure to attend the referee's hearing was his own doing. Thus, we find this assignment of error to be without merit.

### VI. CONCLUSION

The district court had subject matter jurisdiction over the State's child support enforcement action. The district court did not abuse its discretion in denying Jarvel's motions for a new trial or to vacate or alter or amend the judgment, and that denial did not deprive Jarvel of due process.

AFFIRMED.